*167 Justice Breyer
delivered the opinion of the Court.
This case focuses upon a criminal defendant whom a state court found mentally competent to stand trial if represented by counsel but not mentally competent to conduct that trial himself. We must decide whether in these circumstances the Constitution prohibits a State from insisting that the defendant proceed to trial with counsel, the State thereby denying the defendant the right to represent himself. See U. S. Const., Amdt. 6; Faretta v. California, 422 U. S. 806 (1975). We conclude that the Constitution does not forbid a State so to insist.
I
In July 1999, Ahmad Edwards, the respondent, tried to steal a pair of shoes from an Indiana department store. After he was discovered, he drew a gun, fired at a store security officer, and wounded a bystander. He was caught and then charged with attempted murder, battery with a deadly weapon, criminal recklessness, and theft. His mental condition subsequently became the subject of three competency proceedings and two self-representation requests, mostly before the same trial judge:
1. First Competency Hearing: August 2000. Five months after Edwards’ arrest, his court-appointed counsel asked for a psychiatric evaluation. After hearing psychiatrist and neuropsychologist witnesses (in February 2000 and again in August 2000), the court found Edwards incompetent to stand trial, App. 365a, and committed him to Logansport State Hospital for evaluation and treatment, see id., at 48a-53a.
*168 2. Second Competency Hearing: March 2002. Seven months after his commitment, doctors found that Edwards’ condition had improved to the point where he could stand trial. Id., at 63a-64a. Several months later, however, but still before trial, Edwards’ counsel asked for another psychiatric evaluation. In March 2002, the judge held a competency hearing, considered additional psychiatric evidence, and (in April) found that Edwards, while “suffering] from mental illness,” was “competent to assist his attorneys in his defense and stand trial for the charged crimes.” Id., at 114a.
3. Third Competency Hearing: April 2003. Seven months later but still before trial, Edwards’ counsel sought yet another psychiatric evaluation of his client. And, in April 2003, the court held yet another competency hearing. Edwards’ counsel presented further psychiatric and neuropsychological evidence showing that Edwards was suffering from serious thinking difficulties and delusions. A testifying psychiatrist reported that Edwards could understand the charges against him, but he was “unable to cooperate with his attorney in his defense because of his schizophrenic illness”; “[h]is delusions and his marked difficulties in thinking make it impossible for him to cooperate with his attorney.” Id., at 164a. In November 2003, the court concluded that Edwards was not then competent to stand trial and ordered his recommitment to the state hospital. Id., at 206a-211a.
4. First Self-Representation Request and First Trial: June 2005. About eight months after his commitment, the hospital reported that Edwards’ condition had again improved to the point that he had again become competent to stand trial. Id., at 228a-236a. And almost one year after that, Edwards’ trial began. Just before trial, Edwards asked to represent himself. Id., at 509a, 520a. He also asked for a continuance, which, he said, he needed in order to proceed pro se. Id., at 519a-520a. The court refused the continuance. Id., at 520a. Edwards then proceeded to trial *169 represented by counsel. The jury convicted him of criminal recklessness and theft but failed to reach a verdict on the charges of attempted murder and battery.
5. Second Self-Representation Request and Second Trial: December 2005. The State decided to retry Edwards on the attempted murder and battery charges. Just before the retrial, Edwards again asked the court to permit him to represent himself. Id., at 279a-282a. Referring to the lengthy record of psychiatric reports, the trial court noted that Edwards still suffered from schizophrenia and concluded that “[w]ith these findings, he’s competent to stand trial but I’m not going to find he’s competent to defend himself.” Id., at 527a. The court denied Edwards’ self-representation request. Edwards was represented by appointed counsel at his retrial. The jury convicted Edwards on both of the remaining counts.
Edwards subsequently appealed to Indiana’s intermediate appellate court. He argued that the trial court’s refusal to permit him to represent himself at his retrial deprived him of his constitutional right of self-representation. U. S. Const., Amdt. 6; Faretta, supra. The court agreed and ordered a new trial. The matter then went to the Indiana Supreme Court. That court found that “[t]he record in this case presents a substantial basis to agree with the trial court,” 866 N. E. 2d 252, 260 (2007), but it nonetheless affirmed the intermediate appellate court on the belief that this Court’s precedents, namely, Faretta, supra, and Godinez v. Moran, 509 U. S. 389 (1993), required the State to allow Edwards to represent himself. At Indiana’s request, we agreed to consider whether the Constitution required the trial court to allow Edwards to represent himself at trial.
II
Our examination of this Court’s precedents convinces us that those precedents frame the question presented, but they do not answer it. The two cases that set forth the Con *170 stitution’s “mental competence” standard, Dusky v. United States, 362 U. S. 402 (1960) (per curiam), and Drope v. Missouri, 420 U. S. 162 (1975), specify that the Constitution does not permit trial of an individual who lacks “mental competency.” Dusky defines the competency standard as including both (1) “whether” the defendant has “a rational as well as factual understanding of the proceedings against him” and (2) whether the defendant “has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.” 362 U. S., at 402 (emphasis added; internal quotation marks omitted). Drope repeats that standard, stating that it “has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.” 420 U. S., at 171 (emphasis added). Neither case considered the mental competency issue presented here, namely, the relation of the mental competence standard to the right of self-representation.
The Court’s foundational “self-representation” case, Faretta, held that the Sixth and Fourteenth Amendments include a “constitutional right to proceed without counsel when” a criminal defendant “voluntarily and intelligently elects to do so.” 422 U. S., at 807 (emphasis in original). The Court implied that right from: (1) a “nearly universal conviction,” made manifest in state law, that “forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so,” id., at 817-818; (2) Sixth Amendment language granting rights to the “accused”; (3) Sixth Amendment structure indicating that the rights it sets forth, related to the “fair administration of American justice,” are “personal!]” to the accused, id., at 818-821; (4) the absence of historical examples of forced representation, id., at 821-832; and (5) “ ‘respect for the individual,’ ” id., at 834 (quoting Illinois v. Allen, 397 U. S. 337, *171 350-351 (1970) (Brennan, J., concurring) (a knowing and intelligent waiver of counsel “must be honored out of ‘that respect for the individual which is the lifeblood of the law’ ”)).
Faretta does not answer the question before us both because it did not consider the problem of mental competency (cf. 422 U. S., at 835 (Faretta was “literate, competent, and understanding”)), and because Faretta itself and later cases have made clear that the right of self-representation is not absolute, see Martinez v. Court of Appeal of Cal., Fourth Appellate Dist., 528 U. S. 152, 163 (2000) (no right of self-representation on direct appeal in a criminal case); Mc-Kaskle v. Wiggins, 465 U. S. 168, 178-179 (1984) (appointment of standby counsel over self-represented defendant’s objection is permissible); Faretta, 422 U. S., at 835, n. 46 (no right “to abuse the dignity of the courtroom”); ibid, (no right to avoid compliance with “relevant rules of procedural and substantive law”); id., at 834, n. 46 (no right to “en-gag[e] in serious and obstructionist misconduct,” referring to Illinois v. Allen, supra). The question here concerns a mental-illness-related limitation on the scope of the self-representation right.w
The sole case in which this Court considered mental competence and self-representation together, Godinez, supra, presents a question closer to that at issue here. The case focused upon a borderline-competent criminal defendant who had asked a state trial court to permit him to represent himself and to change his pleas from not guilty to guilty. The state trial court had found that the defendant met Dusky’s mental competence standard, that he “knowingly and intelligently” waived his right to assistance of counsel, and that he “freely and voluntarily” chose to plead guilty. 509 U. S., at 393 (internal quotation marks omitted). And the state trial court had consequently granted the defendant’s self-representation and change-of-plea requests. See id., at 392-393. A federal appeals court, however, had vacated the defendant’s guilty pleas on the ground that the Constitution *172 required the trial court to ask a further question, namely, whether the defendant was competent to waive his constitutional right to counsel. See id., at 393-394. Competence to make that latter decision, the appeals court said, required the defendant to satisfy a higher mental competency standard than the standard set forth in Dusky. See 509 U. S., at 393-394. Dusky’s more general standard sought only to determine whether a defendant represented by counsel was competent to stand trial, not whether he was competent to waive his right to counsel. 509 U. S., at 394-395.
This Court, reversing the Court of Appeals, “rejected] the notion that competence to plead guilty or to waive the right to counsel must be measured by a standard that is higher than (or even different from) the Dusky standard.” Id., at 398. The decision to plead guilty, we said, “is no more complicated than the sum total of decisions that a [represented] defendant may be called upon to make during the course of a trial.” Ibid. Hence “there is no reason to believe that the decision to waive counsel requires an appreciably higher level of mental functioning than the decision to waive other constitutional rights.” Id., at 399. And even assuming that self-representation might pose special trial-related difficulties, “the competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself.” Ibid, (emphasis in original). For this reason, we concluded, “the defendant’s ‘technical legal knowledge’ is ‘not relevant’ to the determination.” Id., at 400 (quoting Faretta, supra, at 836).
We concede that Godinez bears certain similarities with the present case. Both involve mental competence and self-representation. Both involve a defendant who wants to represent himself. Both involve a mental condition that falls in a gray area between Dusky’s minimal constitutional requirement that measures a defendant’s ability to stand trial and a somewhat higher standard that measures mental fitness for another legal purpose.
*173 We nonetheless conclude that Godinez does not answer the question before us now. In part that is because the Court of Appeals’ higher standard at issue in Godinez differs in a critical way from the higher standard at issue here. In Godinez, the higher standard sought to measure the defendant’s ability to proceed on his own to enter a guilty plea; here the higher standard seeks to measure the defendant’s ability to conduct trial proceedings. To put the matter more specifically, the Godinez defendant sought only to change his pleas to guilty, he did not seek to conduct trial proceedings, and his ability to conduct a defense at trial was expressly not at issue. Thus we emphasized in Godinez that we needed to consider only the defendant’s “competence to waive the right.” 509 U. S., at 399 (emphasis in original). And we further emphasized that we need not consider the defendant’s “technical legal knowledge” about how to proceed at trial. Id., at 400 (internal quotation marks omitted). We found our holding consistent with this Court’s earlier statement in Massey v. Moore, 348 U. S. 105, 108 (1954), that “[o]ne might not be insane in the sense of being incapable of standing trial and yet lack the capacity to stand trial without benefit of counsel.” See Godinez, supra, at 399-400, n. 10 (quoting Massey and noting that it dealt with “a question that is quite different from the question presented” in Godinez). In this case, the very matters that we did not consider in Godinez are directly before us.
For another thing, Godinez involved a State that sought to permit a gray-area defendant to represent himself. Godinez’s constitutional holding is that a State may do so. But that holding simply does not tell a State whether it may deny a gray-area defendant the right to represent himself — the matter at issue here. One might argue that Godinez’s grant (to a State) of permission to allow a gray-area defendant self-representation must implicitly include permission to deny self-representation. Cf. 509 U. S., at 402 (“States are free to adopt competency standards that are more elaborate *174 than the Dusky formulation”). Yet one could more forcefully argue that Godinez simply did not consider whether the Constitution requires self-representation by gray-area defendants even in circumstances where the State seeks to disallow it (the question here). The upshot is that, in our view, the question before us is an open one.
Ill
We now turn to the question presented. We assume that a criminal defendant has sufficient mental competence to stand trial (i. e., the defendant meets Dusky’s standard) and that the defendant insists on representing himself during that trial. We ask whether the Constitution permits a State to limit that defendant’s self-representation right by insisting upon representation by counsel at trial — on the ground that the defendant lacks the mental capacity to conduct his trial defense unless represented.
Several considerations taken together lead us to conclude that the answer to this question is yes. First, the Court’s precedent, while not answering the question, points slightly in the direction of our affirmative answer. Godinez, as we have just said, simply leaves the question open. But the Court’s “mental competency” cases set forth a standard that focuses directly upon a defendant’s “present ability to consult with his lawyer,” Dusky, 862 U. S., at 402 (internal quotation marks omitted); a “capacity ... to consult with counsel,” and an ability “to assist [counsel] in preparing his defense,” Drope, 420 U. S., at 171. See ibid. (“It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial” (emphasis added)). These standards assume representation by counsel and emphasize the importance of counsel. They thus suggest (though do not hold) that an instance in which a defendant who would choose to forgo counsel at trial pre *175 sents a very different set of circumstances, which in our view, calls for a different standard.
At the same time Faretta, the foundational self-representation case, rested its conclusion in part upon preexisting state law set forth in cases all of which are consistent with, and at least two of which expressly adopt, a competency limitation on the self-representation right. See 422 U. S., at 813, and n. 9 (citing 16 state-court decisions and two secondary sources). See, e.g., Cappetta v. State, 204 So. 2d 913, 917-918 (Fla. App. 1967), rev’d on other grounds, 216 So. 2d 749 (Fla. 1968), cited in Faretta, supra, at 813, n. 9 (assuring a “mentally competent” defendant the right “to conduct his own defense” provided that “no unusual circumstances exist” such as, e. g., “mental derangement” that “would ... depriv[e]” the defendant “of a fair trial if allowed to conduct his own defense,” 204 So. 2d, at 917-918); id., at 918 (noting that “whether unusual circumstances are evident is a matter resting in the sound discretion granted to the trial judge”); Allen v. Commonwealth, 324 Mass. 558, 562-563, 87 N. E. 2d 192, 195 (1949) (noting “the assignment of counsel” was “necessary” where there was some “special circumstance” such as when the criminal defendant was “mentally defective”).
Second, the nature of the problem before us cautions against the use of a single mental competency standard for deciding both (1) whether a defendant who is represented by counsel can proceed to trial and (2) whether a defendant who goes to trial must be permitted to represent himself. Mental illness itself is not a unitary concept. It varies in degree. It can vary over time. It interferes with an individual’s functioning at different times in different ways. The history of this case (set forth in Part I, supra) illustrates the complexity of the problem. In certain instances an individual may well be able to satisfy Dusky’s mental competence standard, for he will be able to work with counsel at trial, yet at the same time he may be unable to carry out the basic *176 tasks needed to present his own defense without the help of counsel. See, e. g., N. Poythress, R. Bonnie, J. Monahan, R. Otto, & S. Hoge, Adjudicative Competence: The MacArthur Studies 103 (2002) (“Within each domain of adjudicative competence (competence to assist counsel; decisional competence) the data indicate that understanding, reasoning, and appreciation [of the charges against a defendant] are separable and somewhat independent aspects of functional legal ability”). See also McKaskle, 465 U. S., at 174 (describing trial tasks as including organization of defense, making motions, arguing points of law, participating in voir dire, questioning witnesses, and addressing the court and jury).
The American Psychiatric Association (APA) tells us (without dispute) in its amicus brief filed in support of neither party that “[disorganized thinking, deficits in sustaining attention and concentration, impaired expressive abilities, anxiety, and other common symptoms of severe mental illnesses can impair the defendant’s ability to play the significantly expanded role required for self-representation even if he can play the lesser role of represented defendant.” Brief for APA et al. as Amici Curiae 26. Motions and other documents that the defendant prepared in this case (one of which we include in the Appendix, infra) suggest to a layperson the common sense of this general conclusion.
Third, in our view, a right of self-representation at trial will not “affirm the dignity” of a defendant who lacks the mental capacity to conduct his defense without the assistance of counsel. McKaskle, supra, at 176-177 (“Dignity” and “autonomy” of individual underlie self-representation right). To the contrary, given that defendant’s uncertain mental state, the spectacle that could well result from his self-representation at trial is at least as likely to prove humiliating as ennobling. Moreover, insofar as a defendant’s lack of capacity threatens an improper conviction or sentence, self-representation in that exceptional context undercuts the most basic of the Constitution’s criminal law objec *177 tives, providing a fair trial. As* Justice Brennan put it, “[t]he Constitution would protect none of us if it prevented the courts from acting to preserve the very processes that the Constitution itself prescribes.” Allen, 397 U. S., at 350 (concurring opinion). See Martinez, 528 U. S., at 162 (“Even at the trial level ... the government’s interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant’s interest in acting as his own lawyer”). See also Sell v. United States, 539 U. S. 166, 180 (2003) (“[T]he Government has a concomitant, constitutionally essential interest in assuring that the defendant’s trial is a fair one”).
Further, proceedings must not only be fair, they must “appear fair to all who observe them.” Wheat v. United States, 486 U. S. 153, 160 (1988). An amicus brief reports one psychiatrist’s reaction to having observed a patient (a patient who had satisfied Dusky) try to conduct his own defense: “[H]ow in the world can our legal system allow an insane man to defend himself?” Brief for State of Ohio et al. as Amici Curiae 24 (internal quotation marks omitted). See Massey, 348 U. S., at 108 (“No trial can be fair that leaves the defense to a man who is insane, unaided by counsel, and who by reason of his mental condition stands helpless and alone before the court”). The application of Dusky’s basic mental competence standard can help in part to avoid this result. But given the different capacities needed to proceed to trial without counsel, there is little reason to believe that Dusky alone is sufficient. At the same time, the trial judge, particularly one such as the trial judge in this case, who presided over one of Edwards’ competency hearings and his two trials, will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant.
We consequently conclude that the Constitution permits judges to take realistic account of the particular defendant’s mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to *178 do so. That is to say, the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under Dusky but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves.
IV
Indiana has also asked us to adopt, as a measure of a defendant’s ability to conduct a trial, a more specific standard that would “deny a criminal defendant the right to represent himself at trial where the defendant cannot communicate coherently with the court or a jury.” Brief for Petitioner 20 (emphasis deleted). We are sufficiently uncertain, however, as to how that particular standard would work in practice to refrain from endorsing it as a federal constitutional standard here. We need not now, and we do not, adopt it.
Indiana has also asked us to overrule Faretta. We decline to do so. We recognize that judges have sometimes expressed concern that Faretta, contrary to its intent, has led to trials that are unfair. See Martinez, supra, at 164 (Breyer, J., concurring) (noting practical concerns of trial judges). But recent empirical research suggests that such instances are not common. See, e. g., Hashimoto, Defending the Right of Self-Representation: An Empirical Look at the Pro Se Felony Defendant, 85 N. C. L. Rev. 423, 427, 447, 428 (2007) (noting that of the small number of defendants who chose to proceed pro se—“roughly 0.3% to 0.5%” of the total, state felony defendants in particular “appear to have achieved higher felony acquittal rates than their represented counterparts in that they were less likely to have been convicted of felonies”). At the same time, instances in which the trial’s fairness is in doubt may well be concentrated in the 20 percent or so of self-representation cases where the mental competence of the defendant is also at issue. See id., at 428 (about 20 percent of federal pro se felony defendants ordered to undergo competency evaluations). If so, to *179 day’s opinion, assuring trial judges the authority to deal appropriately with cases in the latter category, may well alleviate those fair trial concerns.
For these reasons, the judgment of the Supreme Court of Indiana is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.

So ordered.

APPENDIX
Excerpt from respondent’s filing entitled ‘“Defendant’s Version of the Instant Offense,’ ” which he had attached to his presentence investigation report:
“ ‘The appointed motion of permissive intervention filed therein the court superior on, 6-26-01 caused a stay of action and apon it’s expiration or thereafter three years the plan to establish a youth program to and for the coordination of aspects of law enforcement to prevent and reduce crime amoung young people in Indiana became a diplomatic act as under the Safe Streets Act of 1967, “A omnibuc considerate agent: I membered clients within the public and others that at/production of the courts actions showcased causes. The costs of the stay (Trial Rule 60) has a derivative property that is: my knowledged events as not unnexpended to contract the membered clients is the commission of finding a facilitie for this plan or project to become organization of administrative recommendations conditioned by governors.’” 866 N. E. 2d, at 258, n. 4 (alterations omitted).