# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 22, 2013      Decided December 17, 2013

No. 12-3110

UNITED STATES OF AMERICA,
APPELLEE

v.

DUANE MCKINNEY,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cr-00113-1)

*Mary E. Davis*, appointed by the court, argued the cause and filed the briefs for appellant.

*Gilead I. Light*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Elizabeth Trosman*, *Virginia Cheatham*, and *Colleen Kennedy*, Assistant U.S. Attorneys.

Before: HENDERSON, ROGERS and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Appellant challenges the district court's finding that he was not suffering from a severe mental illness when he represented himself at trial nearly six years ago. Finding no clear error, we affirm.

**I.**

In July 2007, a grand jury indicted appellant Duane McKinney on one count of conspiracy, four counts of mail fraud, two counts of wire fraud, three counts of unlawful monetary transactions, and four counts of first degree theft after he allegedly engaged in an elaborate scheme to first "obtain title to properties through forged deeds" and then "sell the property, thus gaining in excess of $770,000." Superseding Indictment 4. After representing himself for three of the ten days of trial, McKinney moved for a mental competency exam, arguing that he suffered from bipolar disorder, chronic anxiety, and insomnia, and that he was taking medication that he claimed induced fatigue and memory loss. *See* Trial Tr. 2–4 (Jan. 28, 2008). Although suspicious that McKinney's claim of mental incompetence represented a "last minute" attempt to "circumvent" the trial, *id.* at 9, the district court worried that McKinney had displayed "red flag[s]" that gave the court "concern" that he was "somebody just so mentally deranged that they just don't understand, despite the mountain of evidence, that what they did is wrong," Trial Tr. 13–14 (Jan. 29, 2008). After an overnight competency screening proved inconclusive, the court ordered a "full mental health evaluation" at the Federal Correctional Institution at Butner, North Carolina, asking medical personnel there to "determine (1) whether the defendant is mentally competent to stand trial or plead guilty; and (2) whether the defendant was mentally competent to waive his right to counsel and conduct his own defense." Order (Jan. 30, 2008). The Butner psychologist concluded

that although McKinney met the diagnostic criteria for Antisocial Personality Disorder, he exhibited no signs of psychosis at the time he moved to proceed *pro se*. On the specific question of McKinney's competency to waive his right to counsel and represent himself, the psychologist found "no evidence of a severe mental illness or of an individual who was unable to function in a rational, reasonable manner," and no evidence that "McKinney did not understand the potential limitations of him acting as his own attorney." Butner Forensic Report 10.

At times assisted by court-appointed standby counsel, McKinney represented himself for most of the remaining trial, and the jury convicted him on eleven of the fourteen counts. McKinney then moved for a new trial, claiming that the court should have appointed counsel notwithstanding his desire to represent himself. *See* Def.'s Mot. for Reconsideration 5. In support, he cited the Supreme Court's intervening decision in *Indiana v. Edwards*, 554 U.S. 164 (2008), in which the Court held that "the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Id.* at 178. The district court denied McKinney's motion. Although "not sure" if McKinney's mental health "had something to do with" his "horrible" self-representation, the court was "absolutely certain that the result [of a new trial] would end up being the same" because the government's evidence was "just so overwhelming." Hearing Tr. 20–21 (Nov. 14, 2008).

McKinney appealed, and this Court remanded to the district court "to determine with clarity whether the defendant lacked the mental capacity to represent himself at trial." *United States v. McKinney*, 373 Fed. App'x 74 (D.C. Cir.

2010). In accordance with *Edwards*'s holding that a court may insist on representation by counsel only in instances where a defendant "suffer[s] from severe mental illness to the point where [he is] not competent to conduct trial proceedings by [himself]," 554 U.S. at 178, we held that "severe mental illness" was a "threshold" for requiring a defendant to accept appointed counsel, *McKinney*, 373 Fed. App'x at 75. We therefore directed the district court to determine whether McKinney had a severe mental illness during his self-representation, and if so, to "exercise its discretion to determine whether to grant [McKinney's] motion for a new trial." *Id.* at 76. In other words, if the district court determined that McKinney had been incompetent to represent himself during trial and that it should have insisted upon representation by counsel, it should "conduct a new trial, with [McKinney] represented by counsel." *Id.* Consistent with *Edwards*, we believed that the district court was ideally placed to "make [a] more fine-tuned mental capacity decision[]" based on McKinney's mental health evaluations and the court's own observations, leaving it up to the district court to decide whether to "take additional evidence or allow briefing on the defendant's state of mind at the relevant time." *Id.* at 75–76 (internal quotation marks omitted).

The district court then ordered an additional mental health evaluation at Butner to determine whether McKinney was competent to represent himself at the 2008 trial. *See* Order 2 (June 13, 2011); Hearing Tr. 5, 34 (Oct. 12, 2012). In response, the medical staff again examined McKinney and, observing no symptoms of bipolar disorder during his eight month stay at Butner, concluded that McKinney suffered from no severe mental illness and had been competent to waive his right to counsel and represent himself during trial. *See* Hearing Tr. 34, 62 (Oct. 12, 2012). After "careful consideration" of this and other mental health examinations,

and given its own observations of McKinney's behavior, the district court found that McKinney suffered not from a severe mental illness, but from a personality disorder that gave him "this grandiose idea about his ability to appropriately represent himself in this case." Hearing Tr. 5 (Dec. 14, 2012). McKinney, moreover, had "devised a fairly sophisticated scheme to acquire the ownership, possession of others' property for the purpose of materially enriching himself," and had allowed his standby counsel to deliver his closing argument—both signs of his competency. *Id.* at 4–5. Finding that McKinney "ha[d] the ability to make an informed decision about his desire to represent himself and that he was . . . competent to make that decision and to waive his right to counsel," the district court denied McKinney's motion for a new trial. *Id.* at 6.

McKinney appeals. We will uphold the district court's conclusion that McKinney was competent to represent himself—as we would any competency determination— "unless it is clearly arbitrary or erroneous." *United States v. Battle*, 613 F.3d 258, 262 (D.C. Cir. 2010) (internal quotation marks omitted).

## II.

Arguing that the district court erroneously found him competent to represent himself, McKinney relies heavily on the Supreme Court's decision in *Edwards*, which involved a defendant with schizophrenia whom the trial court found competent to stand trial but incompetent to represent himself. 554 U.S. at 169. As mentioned above, the Supreme Court held that the Constitution "permits States to insist upon representation by counsel for those competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Id.* at 178. While noting that a

"higher standard" applies to assessing the competency for self-representation, compared to the competency to stand trial or to waive counsel, 554 U.S. at 172–76, the Court expressly declined to adopt a "specific standard" to determine when exactly a defendant lacks the mental capacity to defend himself, *id.* at 178. Instead, "the trial judge, particularly one . . . who preside[s] over . . . competency hearings and [trial], will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." *Id.* at 177.

At the outset, we note that this case differs from *Edwards* in an important respect: whereas *Edwards* decided whether the trial court improperly *forced* counsel upon a severely mentally ill defendant, McKinney argues that the district court here improperly *failed* to do the same. In other words, McKinney asks us to hold that *Edwards* means not just that a trial court *may* insist upon representation for defendants who, due to severe mental illness, are incompetent to proceed *pro se*, but that it *must* do so. As our earlier order made clear, however, a district court's "discretion . . . to limit [a] defendant's right to self-representation" is triggered only if the court "first determine[s] whether the defendant 'suffer[s] from severe mental illness to the point where [he is] not competent to conduct trial proceedings by [himself].'" *McKinney*, 373 Fed. App'x at 75 (quoting *Edwards*, 554 U.S. at 178). As we explain below, because we see no clear error in the district court's finding that McKinney failed to meet this "threshold" level of incompetency under *Edwards*, we have no need to determine whether "may" means "must" with respect to representation in the *Edwards* context.

McKinney contends that the district court's competency finding was fundamentally flawed because it assessed his competency to waive his right to counsel, not his competency

to represent himself. In support, he points to the district court's final sentence, which states, in pertinent part: "it is my view that [McKinney] did, in fact, have the ability to make an informed decision about his desire to represent himself and that he was, in fact, *competent to make that decision and to waive his right to counsel*." Hearing Tr. 14 (Dec. 14, 2012) (emphasis added). If this were all the district court had to say about the issue, we might agree with McKinney. As *Edwards* emphasizes, "'the competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself.'" 554 U.S. at 172 (quoting *Godinez v. Moran*, 509 U.S. 389, 399 (1993)). Assessing the latter—that is, "whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so"—calls for a "higher standard" under *Edwards*. 554 U.S. at 173, 178–79. Our earlier order remanding the case placed this inquiry squarely before the district court, and had the court gauged only McKinney's competency to waive his right to counsel, not his competency to represent himself, another remand would be necessary.

As the government points out, however, McKinney "focuses on a single sentence in the trial judge's findings and ignores the larger context of the ruling." Appellee's Br. 35 (footnote omitted). Taken as a whole, the district court's actions following remand demonstrate that the court properly focused on the *Edwards* issue, addressing McKinney's competency to represent himself, not just his competency to stand trial or to waive counsel. The district court invited additional briefing and ordered mental health evaluations specifically on the *Edwards* issue. *See* Order n.1 (Mar. 18, 2010); Order 2 (June 13, 2011) (ordering Butner psychologists to evaluate "whether, at the commencement of his trial in this case in January of 2009, Mr. McKinney . . . 'suffer[ed] from severe mental illness to the point where [he

was] not competent to conduct trial proceedings by [himself]'" (quoting *Edwards*, 554 U.S. at 178)). And in the end, the district court expressly found that "based upon all of the examinations that have been done, [McKinney] did not suffer from a severe mental illness." Hearing Tr. 5 (Dec. 14, 2012). Given this, we think it quite clear that the district court deemed McKinney competent to represent himself at trial.

McKinney next argues that the district court "ignored . . . a wealth of evidence" revealing that his mental health concerns "went beyond a personality disorder." Appellant's Br. 22. Specifically, McKinney points to his pre-trial treatment for "depression with manic features," a diagnosis of "probable bipolar disorder during trial," a post-trial "diagnosis of depression with psychotic features," and Bureau of Prisons records showing that he was prescribed anti-psychotic medications following trial. *Id.* at 22–23; Appellant's Reply Br. 5. But the mere existence of *some* evidence demonstrating that McKinney was diagnosed with a severe mental disorder or prescribed antipsychotic medications before or after the trial does not suggest that the district court clearly erred in basing its competency finding on "*all* of the circumstances that have been presented," including its "observations of Mr. McKinney, both prior to and during the course of the trial and subsequent to the trial and *all* of the examinations that have been done." Hearing Tr. 6 (Dec. 14, 2012) (emphasis added). Moreover, despite this court's previous statement that additional evidence and briefing were optional, the district court invited supplemental briefing, ordered fresh mental health evaluations, and considered testimony about McKinney's competency to represent himself at trial. In its thorough review, the district court took into account five expert evaluations and months of transcripts, direct observations, and first-hand interactions with McKinney during competency hearings, status conferences, and trial.

McKinney insists that the most recent mental health evaluation, which found him competent to represent himself, was "meaningless" because it "failed to review medical records, school records, the presentence report, speak to family members and defense counsel, or review the full transcript of the trial." Appellant's Br. 23–25. But such defects, even assuming they exist, would hardly call into question the district court's own observations or the remaining evaluations, none of which conclusively found signs of severe mental illness or incompetency to self-represent during trial.

Finally, McKinney argues that the district court erred by "[taking] the position that a personality disorder could not qualify as a 'serious mental illness.'" Appellant's Br. 29. But McKinney has given us no basis for deciding whether a personality disorder can, in a clinical sense, constitute a serious mental illness. Indeed, in *Edwards* the Supreme Court expressly declined to define either "severe mental illness" or "incompetency to proceed *pro se*." *See* 554 U.S. at 178 (refusing to adopt "a more specific standard that would deny a criminal defendant the right to represent himself at trial where the defendant cannot communicate coherently with the court or a jury" (internal quotation marks omitted)). In any event, the district court determined that McKinney's psychological impairment—whatever diagnostic form it took—was insufficiently severe to render him incompetent to represent himself.

In sum, we have no reason to disturb the district court's "fine-tuned" judgment that McKinney did not "suffer from severe mental illness to the point where [he was] not competent to conduct trial proceedings by [himself]." *Edwards,* 554 U.S. at 178. We therefore affirm.

*So ordered.*