Filed 4/29/16  P. v. Moseley CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B261997 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA430104) |
| v. | |
| DEANTE MOSELEY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Frederick N. Wapner, Judge.  Affirmed.

_____

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Deante Moseley appeals from the judgment of conviction of one count of second degree robbery. The trial court granted appellant's request to represent himself. Thereafter, the court found appellant suffered from a mental disorder that impaired his ability to represent himself without the assistance of counsel, and relying on *Indiana v. Edwards* (2008) 554 U.S. 164, 177-178 (*Edwards*), the court revoked appellant's propria persona (pro. per.) status. Appellant claims that the trial court violated his right to self-representation when it revoked his pro. per. status because substantial evidence did not support the court's finding of mental illness. In the alternative, appellant argues that the court erred in failing to order a mental health evaluation to determine his competency to stand trial and that the failure to do so violated state law and the United States constitutional right to due process. As we shall explain, appellant's claims lack merit; sufficient evidence supported the court's ruling. Thus, the court did not err in revoking the appellant's pro. per. status or in failing to suspend the proceedings to conduct an evaluation of his competency for trial. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 2, 2014, appellant forced his way into a discount store as the owners were opening the shop for the day. He proceeded to steal several small items, and after a brief confrontation with the owners, appellant escaped. In a separate incident on the same day, appellant entered a different store and purportedly stole several items. The police apprehended appellant shortly thereafter.

The information charged appellant with two counts of second degree robbery (Pen. Code, § 211), and further alleged that appellant had served prior prison terms within the meaning of Penal Code section 667.5, subdivision (b). On October 20, 2014, before the preliminary hearing, appellant waived his right to counsel and requested to proceed in pro. per. The court advised appellant of the risks and obligations of self-representation. Appellant told the court that he had the "equivalent education" of a paralegal and had represented himself in a prior criminal case in 2013. The trial court granted the request. Appellant proceeded to represent himself during the preliminary

2

hearing. He questioned the eyewitnesses and made a motion to dismiss the charges. At the end of the hearing, appellant discussed his need for funds to retain a private investigator.

On November 3, 2014, at the arraignment hearing, appellant acknowledged his rights associated with a criminal trial and entered not guilty pleas to the charges. He discussed and rejected a plea offer from the prosecution and proposed a counter offer. Appellant also filed two handwritten documents which he characterized as a "motion to suppress" and a "[m]otion for [d]ismissal." The court denied the motions and expressed a concern that appellant's filings contained information and admissions that appellant should not disclose to the prosecutor. The court encouraged appellant to accept the appointment of legal counsel, but appellant refused. Appellant claimed that he was a "federal, state, and county confidential informant," that "L.A.P.D., Wilcox, Hollywood Division" harassed him, and that his "due process" rights as a pro. per. had been violated in unspecified ways. He further described an unrelated incident in which he had been sprayed with mace at a store in Hollywood. Appellant also asked for the contact information for the United States Attorney's Office, stating that he wanted to contact Eric Holder. Several times during the hearing the court reflected on appellant's "smiling" and his demeanor, which appeared to be at odds with the seriousness of the proceedings.

On December 11, 2014, at the pretrial hearing, the same judge who conducted the arraignment hearing, appointed standby counsel for appellant and held an in-camera hearing to discuss appellant's pro. per. status. At the in-camera hearing, the court stated that it had learned from the Sheriff's department that appellant had been moved to the "mental observation unit" in the jail on the "high observation floor" and that inmates are placed in that unit when they express an intent to harm themselves or someone else. The court noted that given his placement, appellant would not have access to the pro. per. library in the jail and that his lack of library access disadvantaged him. The court also disclosed that it had learned that appellant was receiving treatment from a psychiatrist

3

and a clinical social worker through the department of mental health.[1]  The court further stated that it "already had a concern about [appellant's], ability to effectively represent [himself] based on the way  [he had] spoken in court" and the motions he had previously filed.  The court noted that appellant had filed a motion in which he confessed to committing a crime.  The court stated that although it did not question appellant's intelligence, the court believed that appellant suffered from a mental disorder that raised questions about his ability to represent himself.  The court revoked appellant's pro. per. status and appointed standby counsel to represent appellant during the trial.  In response, appellant complained that the trial judge suffered from a disorder of "incorrect justice" and further threatened:  "I'll make sure I complain to the Santa Monica Bar Association."

The jury found appellant guilty of one count of robbery.[2]  When the jury announced the verdicts, appellant interrupted the proceedings, uttering expletives and condemning the jury.  He also complained about the violation of his "pro[.] per[.] rights."  During a brief recess in the proceedings, after the jury announced its verdicts and before the court commenced trial on appellant's prior convictions, appellant removed his court clothing, dressed in his jail clothing, and placed the court clothing in the toilet of his holding cell.  The court sentenced appellant to a four-year prison term.  Appellant filed this appeal.

---

[1]  During the hearing appellant interrupted the court several times.  He interjected that he had been moved to the mental observation unit because he had a "cardiac arrest" and because the deputies wanted to deny his pro. per. rights.

[2]  The jury deadlocked on the other count of robbery, and the court declared a mistrial and dismissed that count.

## DISCUSSION

I.      *Revocation of the Right to Self-Representation*

Appellant argues that the trial court erred when it revoked his right to represent himself because sufficient evidence did not support the finding that he suffered from a severe mental illness that impaired his ability to present a defense without the assistance of counsel.  We disagree.[3]

A trial court must allow a defendant to represent himself if he knowingly and intelligently makes an unequivocal and timely request to do so.  (*Faretta v. California* (1975) 422 U.S. 806, 836; *People v. Windham* (1977) 19 Cal.3d 121, 127-128.)  The right to self-representation, however, is not absolute.  (*Edwards*, *supra*, 554 U.S. at p. 171.)  In *Edwards,* the United States Supreme Court held that a court may limit a defendant's right to self-representation if the defendant lacks the mental capacity to conduct his defense.  (*Id*. at p. 178 ["[T]he Constitution permits States to insist upon representation by counsel for those . . . who . . . suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves."].)

The Court in *Edwards* did not establish a specific test for mental competence to represent oneself or define "severe" mental illness.  Rather, the *Edwards* Court acknowledged that "[m]ental illness itself is not a unitary concept.  It varies in degree.  It can vary over time.  It interferes with an individual's functioning at different times in different ways." (*Edwards*, *supra*, 554 U.S. at p. 175.)  Likewise, a finding of mental incompetency does not require a formal diagnosis of mental illness or a professional psychological or psychiatric evaluation to assist in determining a defendant's mental status.  (See *People v. Johnson* (2012) 53 Cal.4th 519, 530.)  Instead, the trial court's first-hand observation of the defendant's behavior and conduct may support a finding that

---

[3] Preliminarily, we reject the Attorney General's assertion that appellant waived or acquiesced to the court's revocation of his pro. per. status.  Although, during the in-camera proceeding appellant acknowledged the trial court's decision to revoke his pro. per. status; appellant neither agreed nor acquiesced to it.  Instead, he objected and even threatened to report the judge to the Santa Monica Bar Association.  In view of the circumstances, appellant preserved this issue for appeal.

a defendant suffered from requisite mental illness. (*Ibid.*) Ultimately, the focus of the competency inquiry is not on the exact nature or intensity of the defendant's mental illness, but rather on its effect on defendant's ability to represent him. Indeed, "*Edwards* described competence to represent oneself at trial as the ability 'to carry out the basic tasks needed to present [one's] own defense without the help of counsel.' " (*People v. Johnson*, *supra*, 53 Cal.4th at p. 530, quoting *Edwards*, *supra*, 554 U.S. at pp. 175-176.) In making the requisite finding, the trial court may consider, inter alia, the defendant's: (1) awareness of the proceedings; (2) capacity to perceive and evaluate problematic situations that arise in the case; (3) ability to gather, understand and use relevant information; (4) capability to rationally respond to the charges and to justify a decision with a plausible reason; (5) aptitude to formulate and implement simple defense strategies and tactics; and (6) ability to communicate coherently to the court. (*People v. Johnson*, *supra*, 53 Cal.4th at pp. 529-530.)

On a cold record we cannot evaluate a defendant's demeanor. We thus give great deference to the trial court's exercise of discretion in determining whether the defendant is mentally competent to represent himself, and the decision will be upheld if supported by substantial evidence. Such deference is especially appropriate where, as here, the same judge has observed the defendant at several court hearings. (*People v. Johnson*, *supra*, 53 Cal.4th at p. 531.)

The court, in this case, revoked appellant's pro. per. status based on its finding that appellant suffered from a mental disorder that caused the judge to doubt defendant's ability to represent himself. Sufficient evidence supported this determination.[4] The trial court had multiple opportunities to observe appellant and interact with him. Even though

---

[4] In reaching this conclusion we reject appellant's assertion that the trial court's determination was improperly based on appellant's out-of-court behavior and that appellant had no access to the pro. per. law library in the jail. The court did mention those two matters early in the proceeding, but in stating the reasons for its finding the court relied only on the "way [he had] spoken in court" and the motions he had previously filed. We reject defendant's request that we speculate that the judge harbored unarticulated reasons for his decision.

appellant appeared to understand the charges and nature of the proceedings, over the course of several hearings, appellant's conduct changed—he interrupted the court, made nonresponsive comments, offered incoherent remarks and complained about irrelevant and unrelated matters and incidents. Based on the court's comments on the record, it appears that appellant's behavior deteriorated in a short period. Appellant's written filings and oral presentations also support the trial court's determination. Appellant's filings and oral statements shed light on his mental status, and on several occasions the court questioned the wisdom of appellant's written disclosures and admissions, particularly his admission of committing a crime contained in one of his written motions. The trial court properly considered the motions appellant filed and the "way he had spoken in court" in assessing whether appellant had the mental capacity to represent himself. (See *Edwards*, *supra*, 554 U.S. at pp. 176, 178 [defendant's written filings and representations demonstrated incompetence to represent himself]; *People v. Johnson*, *supra*, 53 Cal.4th at pp. 529-530 [A court may consider the defendant's ability to formulate a plausible defense and execute rational defense strategies, in making the required mental competency determination.].) In addition, the court reflected on appellant's unusual courtroom demeanor—smiling and pleasant—which appeared inconsistent with the proceedings, and created the impression that appellant did not appreciate the seriousness of the situation. These first-hand observations of appellant support the court's finding that appellant's mental condition prevented him from carrying out the basic tasks necessary for effective self-representation. Consequently, under the circumstances and given the great deference afforded the trial court in making these competency findings, we cannot conclude that the trial court erred when it revoked appellant's pro. per. status.

II.      *Competence to Stand Trial*

In the alternative, appellant argues that assuming sufficient evidence existed to support the court's finding that he suffered from a mental illness as defined by *Edwards* and its progeny, that evidence also raised a reasonable doubt regarding his competency to stand trial. Thus, he argues that the trial court was required to conduct a competency

hearing and that the failure to do so violated state law and his federal due process rights. We do not agree.

In *Edwards,* the Supreme Court found that the standard for competence to stand trial and the standard for competence to represent oneself are different. An individual may well be able to satisfy the mental competence standard to stand trial because he is "able to work with counsel at trial,[**5**] yet at the same time he may be unable to carry out the basic tasks needed to present his own defense without the help of counsel." (*Edwards*, *supra*, 554 U.S. at pp. 175-176.) The Court in *Edwards*, thus, recognized a "gray-area" between the "minimal constitutional requirement that measures a defendant's ability to stand trial and a somewhat higher standard that measures mental fitness for another legal purpose." (*Id*. at pp. 172, 174.; see *People v. Johnson*, *supra*, 53 Cal.4th at p. 528 [California courts have the discretion to deny self-representation to a "gray-area" defendant in those cases where "*Edwards* permits such denial."].) Accordingly, the trial court here was not required ipso facto to suspend the proceedings to conduct a hearing to determine appellant's competency for trial based on its conclusion that appellant lacked the mental fitness to represent himself.

Appellant argues, however, that given the trial court's remarks when it revoked his in pro. per. status, the court should have suspended criminal proceedings and held a competency hearing. In finding appellant had exhibited signs of mental impairment, the trial court's comments focused solely on appellant's ability to represent himself not on his competency to stand trial. The record supports this distinction—appellant was a "gray-area" defendant as that status was described in *Edwards*. He lacked the capacity to represent himself effectively, and yet he appeared to understand the nature of the proceedings. Moreover, the record contains no evidence that appellant was unable to

---

**5**     A defendant is incompetent to stand trial if the defendant has a mental disorder that makes the defendant "unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." (*People v. Dunkle* (2005) 36 Cal.4th 861, 885, overruled in part on other grounds as stated in *People v. Doolin* (2009) 45 Cal.4th 390, 453; see *Dusky v. United States* (1960) 362 U.S. 402 (*per curiam*).)

8

assist his counsel in the conduct of his defense; and appointed counsel never raised a doubt about appellant's competency during the subsequent trial. (See *People v. Howard* (1992) 1 Cal.4th 1132, 1164 [defense "counsel's opinion is undoubtedly relevant" to the question of a defendant's competency to stand trial].) Accordingly, the court did not err in failing to suspend the proceedings to order a competency determination in this case.

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED</u>.


                                        ROTHSCHILD, P. J.
We concur:



        CHANEY, J.



        JOHNSON, J.