17-59-cr
*United States v. Rivera*

# United States Court of Appeals
## For the Second Circuit

August Term 2020

Argued:  March 12, 2021
Decided: July 28, 2022

No. 17-59-cr

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

MICHAEL GARRETT, AKA RAB,

*Defendant,*

PAUL RIVERA, AKA PAUL ZANCE, AKA
PAULEE ZANCE, AKA PAULIE RIVERA, AKA
EDGAR RIVERA, AKA ZANCE, RIVERA, AKA
STEVEN RIVERA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of New York
No. 13-cr-149-1, Kiyo A. Matsumoto, *Judge.*

Before:    WESLEY, SULLIVAN, and MENASHI, *Circuit Judges*.

Defendant-Appellant Paul Rivera appeals from his conviction following a jury trial in the United States District Court for the Eastern District of New York (Matsumoto, *J.*) in which he was found guilty of racketeering, murder in aid of racketeering, various narcotics offenses, interstate prostitution, and sex trafficking of minors.  On appeal, Rivera argues that the district court erred by permitting him to represent himself without a psychiatric evaluation.  We disagree.  While a district court has discretion to conduct an inquiry into a defendant's mental competence before granting a motion to proceed pro se, the court is not *required* to order psychiatric testing and did not err in granting Rivera's motion.  For the reasons stated herein and in the accompanying summary order, which disposes of Rivera's other challenges, we **AFFIRM** the judgment of the district court.

AFFIRMED.

> GWEN M. SCHOENFELD, Law Office of Gwen M. Schoenfeld, LLC, New York, NY, *for Defendant-Appellant*.
>
> ALIXANDRA E. SMITH, Assistant United States Attorney (David C. James, Michael P. Robotti, Assistant United States Attorneys, *on the brief*), *for* Breon S. Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Appellee*.

RICHARD J. SULLIVAN, *Circuit Judge*:

Defendant-Appellant Paul Rivera appeals from his judgment of conviction following a jury trial in the United States District Court for the Eastern District of New York (Matsumoto, *J.*) in which he was found guilty on fourteen counts

2

including racketeering, in violation of 18 U.S.C. §§ 1962(c) and 1963; murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1); drug-related offenses, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A)(i), (b)(1)(A)(iii), (b)(1)(C), and (b)(1)(D); gun-related offenses, in violation of 18 U.S.C. §§ 924(c) and (j)(1); interstate prostitution, in violation of 18 U.S.C. § 2422(a); and sex trafficking of children, in violation of 18 U.S.C. § 1591(a)(1), (a)(2), (b)(1), and (b)(2).

On appeal, Rivera raises several challenges to his conviction and sentence. We address only one of his challenges in this opinion and resolve his remaining arguments in a simultaneously-issued summary order. Here, we conclude that the district court did not err by permitting Rivera to represent himself without a psychiatric evaluation. Accordingly, for the reasons set forth here and in the accompanying summary order, we affirm the district court's judgment.

## I. BACKGROUND

Rivera's charges and conviction stem from his involvement in a criminal organization known as "Together Forever" ("TF"), which Rivera co-founded in the 1980s and which engaged in drug trafficking, forced prostitution, and gang violence. He was arrested in January 2012 following a traffic stop in Pennsylvania that resulted in the seizure of approximately 170 grams of cocaine and 7.5 grams

3

of heroin. He spent the next fourteen months incarcerated in Pennsylvania, during which time the Federal Bureau of Investigation ("FBI") began an investigation into Rivera and TF's activities. On March 11, 2013, Rivera was indicted by a federal grand jury and charged with narcotics conspiracy in connection with his 2012 arrest in Pennsylvania. The superseding indictment charged Rivera with narcotics trafficking, sex trafficking, money laundering, witness tampering, and murder.

During the course of his federal criminal proceedings, Rivera cycled through seven different attorneys before finally electing to represent himself pro se. He was first represented by attorney Steve Zissou, who was appointed on March 1, 2013 and represented Rivera for his first appearance before the district court on the same day. On March 18, the government moved to disqualify Zissou based on an alleged conflict of interest after learning that Zissou's wife was representing a cooperating victim-witness whose identity had to be withheld from Rivera for safety reasons. The government argued that Zissou's disqualification was necessary because he knew the identity of the victim-witness and the fact that she had provided information to the government.

Zissou objected to the disqualification, arguing that "the potential complication from disqualification of counsel cannot be overstated." App'x at 101.

4

He explained that Rivera is a "very difficult and sophisticated client" who is "extremely distrusting of courts and lawyers." *Id.* He further noted that Rivera was "head[]strong, opinionated, drug addicted[,] and likely suffering from some form of undiagnosed psychological instability," and predicted that his disqualification would make it "extremely difficult for successor counsel." *Id.*

A few days later, notwithstanding Zissou's objection, the district court disqualified Zissou for a non-waivable conflict and appointed new counsel. Within two weeks of the district court's appointment of replacement counsel, Rivera hired a new, privately-retained attorney to replace him. A little over a month later, on May 14, the private attorney withdrew due to a conflict, and the court appointed Martin Goldberg.

On September 23, Rivera sent a letter to the court stating that he and Goldberg were "at an impasse," and that he "no longer ha[d] any faith in the attorney[-]client relationship nor the communication between [them.]" *Id.* at 145. Goldberg agreed that their "relationship [was] on the rocks" and explained to the court that "part of the problem is, he is enamored with one of the attorneys before me, Mr. Zissou[.]" *Id.* at 152. The court relieved Goldberg and appointed yet another lawyer, Guy Oskenhendler.

5

On October 7, the grand jury returned a second superseding indictment, which charged Rivera with, among other things, murder in aid of racketeering – a death-penalty-eligible offense. The court appointed David Stern as learned counsel to assist Oksenhandler on Rivera's capital offense. When the government ultimately decided to forgo the death penalty on the murder count, the district court determined that Rivera no longer needed two attorneys; Rivera elected to proceed with Stern in April 2014. The following month, Rivera asked to replace Stern. During a July 2014 hearing, the court agreed to replace Stern with attorney Donald DuBoulay, but warned Rivera that "this is now your seventh lawyer, and there is not going to be another lawyer. There is not going to be an eighth lawyer appointed to you." *Id.* at 318.

On April 27, 2015, Rivera requested to proceed pro se at his upcoming trial because he disagreed with DuBoulay on legal strategy and felt DuBoulay was "fighting the case as if [Rivera were] guilty." *Id.* at 775. The district judge held an ex parte hearing pursuant to *Faretta v. California*, 422 U.S. 806 (1975), during which she repeatedly articulated the risks associated with Rivera's self-representation and emphasized the mandatory life sentence he faced and the risk that he might inadvertently trigger the admission of his proffer statement, in which he had

6

admitted his involvement in the murder. The judge inquired of Rivera's "clarity of mind" and his understanding of the charges against him. *Id.* at 776–77. She also considered Rivera's previous pro se submissions and notified him – as she had at the time of his letter writing – that they contained harmful evidentiary admissions. Rivera nevertheless insisted that he understood the risks and stated that he was familiarizing himself with the Federal Rules of Evidence. Having presided over the case for over two years at the time of the hearing, during which time Rivera had "been a wonderful presence in this courtroom" who posed no "issues with [his] conduct," *id.* at 782–83, the judge granted Rivera's request to proceed pro se, with DuBoulay remaining in the role of standby counsel.

After the *Faretta* hearing, counsel for Rivera's co-defendant moved to sever his case from Rivera's, insisting that Rivera was suffering from "mental illness" and was acting "wacky." *Id.* at 791, 793. The prosecutor also expressed concern that Rivera was not making decisions "fully rationally." *Id.* at 793. The judge responded that she had "not observed any wackiness," and had "no doubt that [Rivera] knowingly and voluntarily and rationally, with full understanding of the risks, has chosen to proceed pro se." *Id.* at 793–94.

At trial, Rivera declined to change to civilian clothing and insisted on

wearing his prison uniform in the presence of the jury. Notwithstanding the district court's earlier warnings, Rivera asserted his factual innocence of the murder during his opening statement, thereby triggering the admission of his incriminating proffer statement to the government. He also conducted cross-examinations of the government's witnesses that his co-defendant's counsel described as "painful" and "cringe worthy." *Id.* at 2805. Midway through the cross examination of a cooperating witness, Rivera requested that DuBoulay take over, which the district court allowed.

On June 25, 2015, the jury returned guilty verdicts against Rivera on all counts. Rivera thereafter requested that DuBoulay be reappointed as his counsel, and the district court granted his request. DuBoulay then moved on Rivera's behalf for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, which the district court denied. On December 22, 2016, the district court sentenced Rivera to a mandatory life sentence for murder in aid of racketeering, a consecutive twenty-year sentence for the section 924(c) gun charge, and concurrent sentences for the remaining counts.

Rivera timely appealed, and now argues that the district court committed reversible error by permitting him to represent himself pro se.

8

## II.   STANDARD OF REVIEW

"[A] district court's conclusions regarding the constitutionality of a defendant's waiver of his right to counsel is subject to de novo review," but "its supporting factual findings [are reviewed] under a clearly erroneous standard." *United States v. Spencer*, 995 F.2d 10, 11 (2d Cir. 1993).  "We will affirm a district court's conclusion that a defendant knowingly and voluntarily waived his constitutional rights if any reasonable view of the evidence supports it."  *Id.* (internal quotation marks omitted).

## III.   DISCUSSION

Rivera argues that he was denied the right to a fair trial when the district court permitted him to proceed pro se without first conducting an inquiry into whether he was competent to represent himself at trial.  Specifically, he argues that he "suffered from a decades-long addiction to heroin and cocaine, exhibited signs of mental illness evident throughout the record, and was facing a mandatory life sentence if convicted," yet the district court allowed Rivera to proceed pro se without "psychiatric reports" or a "psychiatric evaluation" and without taking any "further steps to determine whether Rivera was competent to represent himself at trial."  Rivera Br. at 45.  Rivera contends that the district court's decision

9

"violated the principles" announced by the Supreme Court in *Indiana v. Edwards*, 554 U.S. 164 (2008). *Id.* We disagree.[1]

The Supreme Court recognized the importance of a criminal defendant's constitutional right to self-representation in *Faretta v. California*, 422 U.S. 806 (1975). This right reflects "a nearly universal conviction . . . that forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." *Id.* at 817. When a defendant proceeds pro se, however – and thus waives the right to counsel – he "relinquishes . . . many of the traditional benefits associated with the right to counsel." *Id.* at 835. Accordingly, "in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." *Id.* (citing *Johnson v. Zerbst*, 304 U.S. 458, 464–65 (1938)). The district court must ensure that the defendant is "aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* (quoting *Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 279 (1942)).

---

[1] The parties dispute whether Rivera preserved this issue for appeal and thus whether his challenge should be reviewed for clear error or plain error. We need not resolve this dispute because we conclude that the district court committed no error by failing to order psychiatric evaluations prior to granting Rivera's motion to proceed pro se.

In *Edwards*, the Supreme Court identified a narrow exception to the right to self-representation recognized in *Faretta*. In the "exceptional" situation where a criminal defendant is "competent enough to stand trial" but "still suffer[s] from severe mental illness to the point where [he is] not competent to conduct trial proceedings by [himself]," the Constitution permits district courts to deny the right of self-representation and insist upon the appointment of counsel. *Edwards*, 554 U.S. at 178.

Rivera argues that, under *Edwards*, the district court had an affirmative duty to order a psychiatric evaluation to ensure that he did not fall into this narrow category of defendants who are competent to stand trial but not competent to represent themselves. We have explicitly rejected this argument in a non-precedential summary order, stating that "[t]he discretion to proceed with an [*Edwards*] inquiry before allowing a defendant to proceed pro se does not impose on the district court a duty to conduct such an inquiry." *United States v. Scott*, 509 F. App'x 35, 36 (2d Cir. 2013); *see also United States v. Green*, 623 F. App'x 571, 573 (2d Cir. 2015) (stating that "*Edwards* nowhere explicitly suggests" such a requirement). Other circuit courts to consider this issue have reached similar conclusions. *See United States v. Stafford*, 782 F.3d 786, 791 (6th Cir. 2015) ("The

11

Supreme Court in *Edwards* permitted – but did not require – courts to impose counsel on defendants with mental issues who are nonetheless competent to stand trial."); *Panetti v. Stephens*, 727 F.3d 398, 414 (5th Cir. 2013) ("*Edwards* is permissive, *allowing* the state to insist on counsel, but not requiring that the state do so."); *Wright v. Bowersox*, 720 F.3d 979, 986 (8th Cir. 2013) ("*Edwards* did not announce a new constitutional rule for determining competency when a defendant wishes to waive his right to counsel; it merely allows, but does not require, states to have a heightened standard."); *United States v. Bernard*, 708 F.3d 583, 590 (4th Cir. 2013) ("*Edwards* does not stand for the proposition that a state *must* deny the right of self-representation to a defendant of questionable mental competence or that district courts must conduct an additional '*Edwards*' inquiry into the competency of every defendant who requests to proceed pro se."); *United States v. DeShazer*, 554 F.3d 1281, 1289–90 (10th Cir. 2009) ("To the extent that [the defendant] suggests that the district court was duty-bound to deny him the right [to self-representation], we do not read *Edwards* as announcing such a new rule."); *United States v. Berry*, 565 F.3d 385, 391 (7th Cir. 2009) ("The Constitution *may* have allowed the trial judge to block [the defendant's] request to

go it alone, but it certainly didn't require it.").[2] Indeed, Rivera points us to no decision in which a court held that, under *Edwards*, a district court has the affirmative duty to conduct an additional competency inquiry before allowing a defendant to represent himself.

We therefore hold that, where a defendant has been found competent to stand trial, *Edwards* does not *require* a court to conduct a further competency hearing or order psychiatric evaluations before permitting a defendant to proceed pro se. Moreover, on the facts before us, we cannot say that the district court abused its discretion in failing to sua sponte order a psychiatric evaluation prior to determining that Rivera "knowingly and intelligently" waived his right to counsel. *Faretta*, 422 U.S. at 835. The district court "will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." *Edwards*, 554 U.S. at 174. Here, the judge

---

[2] The Eleventh Circuit has adopted a similar holding in a nonprecedential opinion. *See United States v. Jackson*, 859 F. App'x 389, 390 (11th Cir. 2021). Two other circuits have left the issue open. *See United States v. Brugnara*, 856 F.3d 1198, 1213 (9th Cir. 2017) (declining to decide whether *Edwards* imposes a duty on the district court to terminate self-representation because the defendant "has not shown himself to be in the *Edwards* class of defendants 'who suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves"); *United States v. McKinney*, 737 F.3d 773, 777 (D.C. Cir. 2013) ("[B]ecause we see no clear error in the district court's finding that [the defendant] failed to meet this 'threshold' level of incompetency under *Edwards,* we have no need to determine whether 'may' means 'must' with respect to representation in the *Edwards* context.").

clearly detailed the dangers of proceeding pro se and emphasized the advantages of representation by a trained, experienced attorney. *See* App'x at 765–771, 775. She questioned Rivera about his understanding of the risks he faced by waiving his right to counsel, prompted him to explain these risks in his own words, and asked Rivera about his physical and mental health. *See id.* at 771–785. The judge, who had presided over Rivera's case for two years at that point, further noted that she had had no "issues with [Rivera's] conduct." *Id.* at 782. When counsel for Rivera's co-defendant sought severance, the judge rejected the suggestion that Rivera had been acting "wacky" and again emphasized that she had "no doubt that [Rivera] knowingly and voluntarily and rationally, with full understanding of the risks, has chosen to proceed pro se." *Id.* at 793–94.

Though Rivera now insists that his self-representation was "irrational, self-destructive, and led to the unnecessary admission of devastating evidence," Rivera Br. at 62, this argument in no way undermines the district court's finding that Rivera knowingly waived his right to counsel or otherwise suggests that Rivera "suffer[ed] from severe mental illness to the point where [he was] not competent to conduct trial proceedings by [himself]." *Edwards*, 554 U.S. at 178. A defendant's choice to represent himself "must be honored," "although he may

14

conduct his own defense ultimately to his own detriment." *Faretta*, 422 U.S. at 834. We therefore conclude that the district court did not err in granting Rivera's motion to proceed pro se.

## IV. CONCLUSION

For the foregoing reasons and the reasons stated in the accompanying summary order filed simultaneously with this opinion, we **AFFIRM** the judgment of the district court.