

# In the
# Missouri Court of Appeals
## Western District

IN THE MATTER OF THE CARE AND
TREATMENT OF PETE WRIGHT,

               **Appellant,**

v.

STATE OF MISSOURI,

               **Respondent.**

**WD82895**

**OPINION FILED:**

**September 7, 2021**

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Mark Anthony Styles, Jr., Judge**

**Before Division Two:
Thomas N. Chapman, P.J., Karen King Mitchell, and Anthony Rex Gabbert, JJ.**

Pete Wright appeals the judgment of the Probate Division of the Circuit Court of Jackson County ("probate court") committing him to the custody of the Department of Mental Health under the Sexually Violent Predator ("SVP") Act, sections 632.480 through 632.525.[1]  Wright contends that the probate court erred in allowing him to represent himself at the commitment trial.  The judgment is affirmed.

---

[1] All statutory references are to RSMo 2016 unless otherwise indicated.

1

## Factual and Procedural Background

On August 24, 2017, the State filed a petition seeking to have Wright committed as an SVP. At the time, Wright was serving a 30-year sentence for forcible sodomy and forcible restraint for approaching a young woman with a knife while she was walking in a park, grabbing her, threatening to kill her if she screamed, and dragging her along a creek bed into an open sewer tunnel where he removed her dress and underwear, and placed his mouth on her vagina.

An assistant public defender entered his appearance as counsel for Wright on September 11, 2017, and represented Wright at the probable cause hearing on September 26, 2017. On November 28, 2017, Wright filed a *pro se* motion asking the probate court to allow him to proceed *pro se* based on an "irreconcilable conflict" with his attorney. On January 18, 2018, Wright's attorney filed a motion requesting the probate court to allow the Office of the Public Defender to withdraw from representation in the case based on Wright's wish to proceed *pro se.* A hearing was held on February 9, 2018, on the motion to withdraw.

At the hearing, Wright testified that he wanted to proceed *pro se* and did not want an attorney to represent him. He told the probate court that he had completed one year of college in 1984. When asked his understanding of the nature of the proceedings, the following exchange occurred:

> A [Wright]: These proceedings are under the Sexually Violent Predator Statute, 632.480 to 632.513. And they're attempting to civilly commit me for having a mental abnormality.
>
> Q [Probate Court]: And then if you are, based on the civil commitment, as you state, of the mental abnormality what else do they need to prove in order for them to civilly commit you? Do you know that?
>
> A: They have to prove, first, that I have a sexual offense. They have to prove that I can't substantially control my behavior.

2

Q: What steps have you taken to make yourself familiar with these proceedings?

A: I have studied all the case law online. I have studied my discovery, the Missouri Constitution on the subject.

Wright explained that he had access to Westlaw to conduct his research.

Wright testified that the purpose of the hearing was to determine if he was qualified to represent himself. He remembered that a probable cause hearing had been held in the case and knew that the Department of Mental Health examination had been sent to the court for review. He believed the next phase of the proceeding was for the State to obtain an independent review, followed by a pretrial conference and a trial. He said that he had not yet been examined by the State's doctor.

Wright denied acting under duress, consuming any alcohol or drugs within the previous twenty-four hours, and being under the influence of any medication that might cause his waiver of counsel to not be knowing or intelligent. He testified that he understood that if his self-representation was not successful, he would be found to be an SVP and civilly committed to the Department of Mental Health "for an undetermined period of time for so-called treatment."

Wright testified that he understood that he had a right to counsel, including court-appointed counsel. He acknowledged that his court-appointed attorney was very skilled in this specialized area of the law and admitted that he probably could not represent himself properly at trial. He indicated that his attorney would not file pre-trial motions as he wished he would. Wright understood that he would not receive any special indulgences or exceptions if he represented himself. He also understood that he would not be appointed a different attorney if the public defender was allowed to withdraw.

3

Wright understood that he had the right to a jury trial and that if his attorney withdrew, he would have to represent himself in a jury trial. When asked if he felt prepared to do that, Wright responded that he felt he had no choice. He acknowledged he had no experience in representing himself in a jury trial but stated that he would rather represent himself than have the attorney appointed to him. Wright said that his sole complaint with his attorney was his unwillingness to file pretrial motions.

Wright understood that he alone would be responsible for gathering evidence and preparing for trial if he represented himself, and that he would be responsible for picking a jury. Wright testified that he had witnessed that process on three previous occasions, including his own criminal trial. He said that he had been a *pro se* litigant for about twenty-five years and knew "the process of a trial" from reading transcripts and jury instructions.

Wright understood that the State may call expert witnesses, such as psychologists, to testify and that it would be his sole responsibility to question those experts, and he stated that he was prepared to ask those questions. The public defender present at the hearing interjected that the Department of Mental Health evaluator had found that Wright did not qualify as an SVP and that the defense had planned to call that evaluator as Wright's expert witness. Wright testified that he would probably want the evaluator to testify on his behalf. The public defender said that her office would not pay for litigation expenses if it was allowed to withdraw.

The following exchange then occurred:

[Probate Court]: And so, generally, and this is just some final comments. Generally, it's a mistake to proceed without a lawyer. Self-representation is almost always unwise and you may end up doing things in your representation that, ultimately, may be to your determent (sic). And I'm sure you're aware of that, Mr. Wright. Reminder that you're not going to receive any special indulgences.

4

The Petitioner in this matter will be represented by an experienced professional counsel in this specific area of the law. As you have seen and during your research, you know, it's a very particular area of the law. You even cited just the few statutes that apply to this.

If there's any misbehavior or trial disruption because of your actions, your right of self-representation will be vacated and an attorney will be appointed for you. And if you are unsuccessful in your self-representation, you cannot then later claim inadequacy of representation. And you understand all those?

[Wright]: I understand and I agree with them.

[Probate Court]: Okay. And so is there any other reason that you think of where you don't feel that you could be making a knowing and intelligent waiver of counsel?

[Wright]: It's a knowing waiver. And I'm weighing it against, again, pretrial motions. I don't want to give up my right for pretrial motions, even in the sense of appellate claims or grounds for them for appeal. I have some issues that I think I can be released.

At the end of the hearing, the probate court granted the public defender's motion to withdraw and allowed Wright to proceed *pro se* in the matter.

At trial, the State presented two witnesses—Dr. Harry Goldberg, a forensic clinical psychiatrist from the State of California, and Dr. Nena Kircher, the psychologist who prepared Wright's end of confinement evaluation for the Missouri Department of Corrections. Both opined that Wright was more likely than not to engage in predatory acts of sexual violence if not confined to a secure facility and that he was a sexually violent predator. Wright did not testify or present any evidence.

The jury returned a verdict declaring Wright a sexually violent predator. The probate court entered an order committing him to the custody of the Department of Mental Health for care, control, and treatment until such time as his mental abnormality has so changed that he is safe to be at large.

This appeal by Wright followed.

5

## Point on Appeal

Wright's sole point on appeal indicates as follows:

> The trial court erred when it allowed Mr. Wright to go *pro se* because in an SVP commitment trial a respondent's competency is at issue as a matter of law, and a person with a pending inquiry as to their competence may not self-represent until the matter of competency is resolved. This was structural error as a matter of law, in that it risked allowing a person who was incompetent to do so representing himself, and denied Mr. Wright effective assistance at the trial on his mental fitness. In allowing Mr. Wright to go *pro se* where his competency was issue without first resolving that matter, the court denied Mr. Wright his rights to assistance of counsel and due process of law as guaranteed by the Sixth, Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution.

Putting aside the clear inadequacies in its form, we are able to discern Wright's point as follows. Wright contends that the probate court erred in allowing him to represent himself in the SVP commitment trial, because his competency to stand trial was, by virtue of his alleged SVP status, necessarily at issue, and that he should not have been allowed to represent himself until the matter of competency was resolved. In his argument Wright also seems to make the related argument that the trial court failed to apply the right standard and/or abused its discretion in doing so. Though multifaceted, we will endeavor to address these various points. [2]

---

[2] Wright's point relied on fails to comply with Rule 84.04(d). The rule requires each point to "(A) [i]dentify the trial court ruling or action that the appellant challenges; (B) [s]tate concisely the legal reasons for the appellant's claim of reversible error; and (C) [e]xplain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." Rule 84.04(d). "The point shall be in substantially the following form: 'The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error*], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*].'" *Id.* While Wright's point relied on identifies the challenged trial court ruling, it fails to state concisely the legal reasons for Wright's claim of error and fails to explain how those legal reasons, in the context of the case at hand, support the stated claim of error. It does not substantially follow the form set out in Rule 84.04(d). Failure to comply with Rule 84.04 preserves nothing for appellate review. *Hartman v. Logan*, 602 S.W.3d 827, 835 n.7 (Mo. App. W.D. 2020). Because we prefer to dispose of an appeal on the merits if the argument on appeal is readily discernible, we exercise out discretion here to address the merits of Wright's appeal. *Id.*

6

**Preservation of Issue on Appeal**

Ironically, Wright argues that his claim of error was waived and thus seeks plain error review; whereas the State takes the position that his claim was preserved. Generally, "[a] constitutional claim must be made at the first opportunity to be preserved for review." *State v. Bolden*, 558 S.W.3d 513, 517 (Mo. App. E.D. 2016) (internal quotes and citation omitted). However, "we cannot expect a defendant to object to his own motion to represent himself." *Id.* In *Bolden*, a claim of error in allowing self-representation was deemed not preserved because standby counsel was appointed during trial and counsel did not include the issue in the motion for new trial. *Id.* In this case, standby counsel was not appointed for Wright prior to his appeal, and Wright filed his motion for new trial *pro se*. Because Wright could not have been expected to object to his own motion to represent himself, and because that self-representation continued post-trial, his claim is treated as preserved.

**Criminal Case Standards for Waiver of Counsel Also Applicable in SVP Proceedings**

An SVP action is a special statutory proceeding. *Fogle v. Koster*, 382 S.W.3d 139, 144 (Mo. App. W.D. 2012). "In special statutory proceedings, a court is limited to the powers granted to it by statute." *Id.* The right to counsel in an SVP proceeding is provided in sections 632.489 and 632.492 of the SVP Act.[3] Additionally, a suspected SVP has a due process right to

---

[3] Section 632.489, RSMo 2016, governing the probable cause determination, provides in pertinent part:

> At the probable cause hearing as provided in subsection 2 of this section, the detained person shall have the following rights in addition to the rights previously specified:
> (1) To be represented by counsel;
> (2) To present evidence on such person's behalf;
> (3) To cross-examine witnesses who testify against such persons; and
> (4) To view and copy all petitions and reports in the court file, including the assessment of the multidisciplinary team.

§ 632.489.3. Section 632.492, RSMo 2016, provides in pertinent part, "At all stages of the proceedings pursuant to sections 632.480 to 632.513, any person subject to section 632.480 to 632.513 shall be entitled to the assistance of

the assistance of counsel during SVP proceedings.  *In re Care and Treatment of Grado*, 559 S.W.3d 888, 895 (Mo. banc 2018).  Such protection is necessary because civil commitment in SVP proceedings impinges on the SVP's fundamental liberty interest.  *Id.*

In *In re Care and Treatment of Spencer*, 103 S.W.3d 407, 418 (Mo. App. S.D. 2003), the Southern District of our court held that, even though proceedings under the SVP Act are not criminal, the standard used in criminal cases regarding the waiver of counsel would apply:  that, considering the totality of the circumstances, the waiver of counsel must be knowing and intelligent, which, in turn, depends on the specific facts and circumstances of the case.  *Id.*  The *Spencer* court reviewed the trial court's acceptance of the SVP defendant's waiver of counsel for an abuse of discretion, and held, where the totality of the circumstances showed that the defendant made a knowing, intelligent, and unequivocal waiver, the probate court might have abused its discretion had it *denied* the defendant his constitutional right to represent himself.  *Id.* In doing so, the *Spencer* court recognized that the SVP defendant's right to counsel, like the criminal defendant's right to counsel, necessarily includes the correlative right to self-representation.[4]

An appellate court defers to the trial court's conclusions as to a defendant's mental state and his ability to represent himself.  *State v. Baumruk*, 280 S.W.3d 600, 612 (Mo. banc 2009).

---

counsel, and if the person is indigent, the court shall appoint counsel to assist such person."

[4]  A criminal defendant has the right to assistance of counsel under the Sixth Amendment.  *State v. Black*, 223 S.W.3d 149, 153 (Mo. banc 2007).  Such right to counsel "'implicitly embodies a correlative right to dispense with a lawyer's help.'"  *Id.* (quoting *Faretta v. California*, 422 U.S. 806, 814 (1975)).  The right to self-representation implied by the Sixth Amendment is applicable to the states through the Due Process Clause of the Fourteenth Amendment, and prevents a state from forcing counsel upon a criminal defendant.  *Id.*  The trial court has no discretion to force an attorney upon a competent defendant who makes a timely, unequivocal, voluntary, and informed waiver of the right to counsel.  *Id.*  Thus, to waive counsel and proceed *pro se*, a competent defendant's invocation of the rights must be made unequivocally and in a timely manner, and the corresponding waiver of counsel must be knowing and intelligent.  *Id.*

The trial court is not required to make written findings of fact and conclusions of law in support of its ruling on a motion to self-represent, therefore, the reviewing court considers the evidence in the light most favorable to the court's decision. *Id.* at 612 n.6.

In *State v. Bolden*, 558 S.W.3d 513 (Mo. App. E.D. 2016), the trial court granted the criminal defendant's request to waive counsel and represent himself, finding that his waiver was knowing and intelligent, and immediately thereafter granted the State's motion for a psychiatric examination of the defendant to determine his competency to stand trial. *Id.* at 516, 519. The Eastern District of our court held that the trial court's allowing the defendant to waive counsel, where he was not represented by an attorney at the time he waived counsel and where his competency to stand trial was at issue, violated the defendant's Sixth Amendment right to counsel. *Id.* at 518-20. It explained that the defendant's complete lack of representation presented a unique and problematic situation:

> Defendants usually have or are appointed counsel before arraignment and certainly by the time a trial court is considering a waiver of counsel or determining the defendant's competency. Here, Defendant was unrepresented at the time he waived counsel and underwent a subsequent psychiatric examination, and therein lies the cardinal problem.

*Id.* at 520.

### Distinct Standards of Competency in Order to Waive Counsel and To Represent Oneself

While *Bolden* is distinguishable from the instant matter in that Wright was represented by counsel when the probate court allowed the public defender to withdraw and Wright to proceed *pro se*, *Bolden's* discussion of a defendant's competency and his right to counsel and the converse right to self-representation is helpful here. The Eastern District noted that "because the right to counsel is so critical to the defense of an accused, the Constitution requires that 'a defendant choosing self-representation must do so competently and intelligently.'" *Id.* at 518

9

(quoting *Godinez v. Moran*, 509 U.S. 389, 400 (1993)). "This requires a trial court to undergo a 'two-part inquiry,' determining both that the defendant is competent to stand trial and additionally that the waiver of counsel is knowing and voluntary." *Id.* (quoting *Godinez*, 509 U.S. at 400-01). The court then discussed that the three types of competency that can come into play regarding a particular defendant—competency to stand trial, competency to waive counsel, and competency or ability to conduct one's own defense without an attorney's assistance. *Id.* "The standard for determining a defendant's competency to stand trial is the same for competency to waive counsel." *Id.* (citing *Godinez*, 509 U.S. at 396-97). The third type of competency arises when a defendant who has validly waived counsel desires to proceed to trial rather than plead guilty, as in this case. *Id.* "'[T]he Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so.'" *Baumruk*, 280 S.W.3d at 610 (quoting *Indiana v. Edwards*, 554 U.S. 164, 178 (2008)). In other words, "'[t]he Constitution permits [a state trial court] to insist upon representation by counsel for those competent enough to stand trial…but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves.'" *Id.* (quoting *Edwards*, 554 U.S. at 178). *See also Bolden*, 558 S.W.3d at 518. The trial court "'will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant.'" *Baumruk*, 280 S.W.3d at 610 (quoting *Edwards*, 554 U.S. at 177).

In this case, Wrights asserts that, because he was an SVP, his competency to stand trial was necessarily at issue. If that were the case, trial courts would be required to conduct an inquiry into the defendant's competency to stand trial in each and every SVP action (regardless

of whether the SVP defendant waived counsel).  However, the standards for establishing that a defendant is an SVP are distinct from the standard for determining competency to stand trial[5] and, as the State notes, it has already been determined that an evaluation to determine competency to stand trial is not a prerequisite to trial to determine whether a person is a sexually violent predator.  *State ex rel. Nixon v. Kinder*, 129 S.W.3d 5, 8-10 (Mo. App. W.D. 2003). Unlike a criminal defendant, who has the right not to be tried while legally incompetent under the Due Process Clause of the United States Constitution and section 552.020,[6] a suspected SVP does not have the same protection.  *Id.*  Neither due process nor the SVP statutes require a suspected SVP to understand the nature of SVP proceedings or to assist in his own defense.  *Id.* However, because the SVP Act and due process grants a suspected SVP the right to counsel, which embodies the correlative right to self-represent, competency to waive counsel and to defend oneself is at issue when a suspected SVP attempts to waive his right to counsel and to represent himself in SVP proceedings.

---

[5]  Wright conflates competency to stand trial and competency to represent himself with the mental abnormality that the State must prove to commit an SVP.  Mental illness, however, is not a unitary concept.  *Indiana v. Edwards*, 554 U.S. 164, 175 (2008).  "It interferes with an individual's functioning at different times in different ways."  *Id.* Accordingly, "the suspicion or actual presence of some degree of mental illness or need for psychiatric treatment does not equate with incompetency to stand trial[.]"  *Cooper v. State*, 621 S.W.3d 624, 631 (Mo. App. W.D. 2021) (internal quotes and citation omitted).  The test for competency to stand trial is "whether the accused has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and whether he has a rational as well as a factual understanding of the proceedings against him."  *Id.* (internal quotes and citations omitted).  On the other hand, the issue in an SVP proceeding is very narrow and specific—whether the defendant is a sexually violent predator.  A sexually violent predator is defined, in pertinent part, as "any person who suffers from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility and who…[h]as…been found guilty in this state…of a sexually violent offense."  § 632.480(5).  A mental abnormality for purposes of the SVP statutes is "a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others."  § 632.480(2).  The inability to control sexual urges or behavior does not necessarily have any bearing on competence to stand trial or to represent oneself.

[6] Section 552.020.1, RSMo Cum. Supp. 2020, provides, "No person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or her or to assist in his or her own defense shall be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures."

11

In this case, the evidence supported the probate court's ruling allowing Wright to represent himself in the SVP proceeding. It showed that Wright's waiver of counsel was timely, unequivocal, knowing, and intelligent, and that he was competent to waive counsel and to represent himself at trial. *Baumruk*, 280 S.W.3d at 610; *Black*, 223 S.W.3d at 153; *Spencer*, 103 S.W.3d at 418.

First, the evidence showed that Wright's request to proceed *pro se* was timely and unequivocal. In November 2017, over a year and a half before jury trial in June 2019, Wright filed his *pro se* motion asking the probate court to allow him to proceed *pro se* based on "irreconcilable conflict" with his attorney. Shortly after, Wright's attorney filed a motion requesting the court allow the Office of the Public Defender to withdraw from representation in the case based on Wright's wish to proceed *pro se*, and the probate court held a hearing on the motion to withdraw in February 2018. At the hearing, Wright testified that he wanted to proceed *pro se* and did not want an attorney to represent him because his attorney would not file the pre-trial motions that he wanted. Wright acknowledged that his appointed attorney was very skilled in this specialized area of law and that he had no experience in representing himself in a jury trial, but insisted that he would rather represent himself than have the attorney appointed to him. Wright's request to waive counsel and proceed *pro se* was both timely and unequivocal.

Furthermore, the evidence showed that Wright's waiver of counsel was knowing and intelligent and that he was mentally competent to waive counsel and represent himself. "Whether a defendant's waiver is made knowingly and intelligently depends on the particular facts and circumstances surrounding the case, including background, experience, and conduct of the accused." *Black*, 223 S.W.3d at 154. While there is no rigid procedure or script, certain areas of inquiry should be explored on the record to ensure that a defendant's waiver is knowing

12

and intelligent. *Id.* at 155. The defendant's capacity to make an intelligent decision and his knowledge of his own situation (nature of the proceedings) should be examined. *Id.* at 156. This does not mean that a defendant must have technical legal knowledge or be as legally competent as an attorney. *Id.* at 155-56. Rather, the court should ensure that the defendant is not acting under duress, does not suffer from a mental incapacity, is literate, and is minimally familiar with the trial process including possible defenses, the different phases of trial, objection procedure, and the elements the State is required to prove. *Id.* at 156. For a court to deny self-representation based on mental incapacity, the defendant must "'suffer from severe mental illness to the point where [he is] not competent to conduct trial proceedings by [himself].'" *Baumruk*, 280 S.W.3d at 610 (quoting *Edwards*, 554 U.S. at 178).

In addition to ensuring that the defendant is mentally competent and understands the nature of the proceedings, the court should also make certain that the defendant understands the possible outcome of the proceeding and exactly what rights he is waiving as well as the dangers associated with waiving constitutional rights. *Black*, 223 S.W.3d at 156.

In this case, the probate court held a hearing specifically to determine whether to grant the public defender's motion to withdraw and to allow Wright to proceed *pro se* and conducted a thorough inquiry of Wright's waiver of counsel and his ability to represent himself. It questioned Wright regarding his understanding of the nature of and possible consequences of the proceedings. Wright correctly testified, "These proceedings are under the Sexually Violent Predator Statute, 632.480 to 632.513. And they're attempting to civilly commit me for having a mental abnormality." Wright testified that the purpose of the current hearing was to determine if he was qualified to represent himself. He was able to tell the probate court the next steps of the SVP proceeding and what the State would need to prove to commit him. He explained that he

13

studied his discovery and case law to familiarize himself with the case. He further understood the possible consequences of the SVP proceeding, testifying that if his self-representation was not successful, he would be committed to the Department of Mental Health for "an undetermined period of time."

The probate court also questioned Wright about his understanding of his rights and the dangers associated with the waiver of those rights and his familiarity with the trial process. Wright testified that he understood that he had a right to counsel, including court-appointed counsel. He further understood that he had a right to a jury trial and that he would be responsible for representing himself at the jury trial if his attorney withdrew, including picking a jury, gathering evidence and preparing witnesses, and questioning expert witnesses that testify. He said that he had witnessed that process on three previous occasions, including his own criminal trial, and that he had been a *pro se* litigant for about twenty-five years and knew "the process of a trial" from reading transcripts and jury instructions. The probate court warned Wright that self-representation is almost always unwise and that he would not get any special treatment, and Wright understood and agreed.

Finally, the record showed that Wright was literate, not under duress, and competent to waive counsel and represent himself. Wright testified that he completed a year of college and that he was not acting under duress or under the influence of drugs or alcohol. While the probate court did not specifically ask Wright if he had any mental illness, the probate court was able to observe Wright's conduct and mental state at the hearing. Nothing in the record showed

disruptive behavior by Wright or indicated that Wright suffered from severe mental illness to the point where he was not competent to conduct trial proceedings himself.[7]

Wright argues that his competency to represent himself was questionable because he was evaluated for competency to stand trial following his arrest for the index offenses. However, the record showed that Wright was ultimately found competent to stand trial for the index offenses. He further argues that his poor performance in representing himself at trial in this case demonstrated that he was not competent to do so. He specifically argues that his trial conduct led the jury to send the following note to the court during deliberations: "Jurors have concerns of our personal security due to the defendant having our names, knowing our names. Please advise." The concern expressed by the jurors did not, on its face, relate to the manner in which Wright conducted himself at trial, and Wright does not make any specific connection. It was just as likely that the jurors' note was prompted by evidence at trial that Wright was focused on seeking revenge against people that he perceived as having wronged him. The jurors could likely have expressed the same concern if Wright had been represented by counsel. Ultimately, the probate court's direct exposure to Wright's conduct and mental state left it in the best position to make "fine-tuned mental capacity decisions tailored to [Wright's] individualized circumstances." *Baumruk*, 280 S.W.3d at 612. This court defers to the probate court's conclusions as to Wright's mental state and his ability to represent himself. *Id.*

---

[7] *Cf. Baumruk*, 280 S.W.3d at 611-12 (trial court did not err in refusing to allow defendant, who was competent to stand trial, to represent himself where evidence showed that defendant suffered permanent brain damage from being shot twice in the head and trial court observed defendant's disruptive behavior at numerous pre-trial hearings and reviewed his *pro se* filings in which he sought to endorse witnesses who lacked any relevance to his trial).

Significant evidence demonstrated that Wright timely, unequivocally, knowingly, and intelligently waived his right to counsel and was competent to represent himself. The probate court did not abuse its discretion in allowing Wright to represent himself in the SVP proceedings.

Wright's sole point is denied.

**Conclusion**

The judgment is affirmed.

Thomas N. Chapman, Presiding Judge

All concur.