**Opinion issued April 10, 2025**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-24-00227-CR**

**NO. 01-24-00228-CR**

———————————

**RUSSELL CORMIER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 262nd District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1549218, 1548048**

**MEMORANDUM OPINION**

A jury convicted appellant Russell Cormier of two counts of the first-degree

felony offense of murder and assessed his punishment at ninety years' confinement

for both offenses.[1] The trial court ordered the sentences to run concurrently. In his sole issue on appeal, Cormier contends that the trial court erred by accepting his waiver of the right to counsel and allowing him to proceed pro se at trial because he was incompetent to waive this right.

We affirm.

## Background

In April 2017, Cormier allegedly shot and killed his ex-wife, complainant Fannie McWhite, outside of her home and drove away in her truck. A few hours later, after driving to his residence and setting his own trailer on fire, Cormier allegedly shot and killed complainant Thornton Bivens, a former co-worker, at the trucking company where Bivens still worked. Police officers apprehended Cormier several days later and placed him under arrest.

Cormier consistently acknowledged—during pretrial proceedings and at trial—that he shot both McWhite and Bivens. However, he consistently denied that he intended to kill them or that his actions were premeditated. He alleged that he shot McWhite in self-defense because he believed she was reaching for a gun that he had given her. He also alleged that he had a mental health breakdown on the

---

[1] *See* TEX. PENAL CODE § 19.02(b)(1)–(2). The charge that Cormier allegedly murdered complainant Thornton Bivens was tried in trial court cause number 1549218 and resulted in appellate cause number 01-24-00227-CR. The charge that Cormier allegedly murdered complainant Fannie McWhite was tried in trial court cause number 1548048 and resulted in appellate cause number 01-24-00228-CR.

morning of the shootings, and he was temporarily insane and in an "altered" state of mind at the time. Over the course of several years, Cormier repeatedly indicated in pro se filings with the trial court that he wished to assert the insanity defense.

During the pendency of the proceeding, the trial court appointed multiple attorneys to serve as counsel for Cormier. Despite being represented by counsel, Cormier often filed his own motions, as well as other documents discussing the facts of the case. On each occasion that the court appointed counsel for Cormier, the relationship between Cormier and his appointed counsel eventually deteriorated. In March 2022, Cormier filed a motion requesting hybrid representation, arguing that he did not have faith in his current counsel, the fourth attorney appointed to represent him. Cormier cited cases allowing hybrid representation and stated that despite his lack of formal legal training, he could do legal research and assist in the preparation of pretrial motions.

Also in March 2022, Cormier filed a pro se "Motion to Moot Murder Indictment Charges Due to Predisposed Mental Illness/Psychosis Medical Issues." He asserted that he should be found not guilty by reason of insanity. He also asserted that in January 2020, he had been evaluated by a doctor who determined that he had schizoaffective or schizotypal disorder and opined that this diagnosis likely played a role in his actions on the morning of the shootings. Cormier later filed a two-page excerpt of this doctor's report with the trial court.

In April 2022, Cormier filed a document with the trial court alleging that he had suffered a traumatic brain injury during October 2019, while in custody at the Harris County Jail.[2] Four days later, he moved to postpone his trial date. In this filing, he requested dismissal of his appointed counsel, who had allegedly rendered ineffective assistance to him. He also referenced his head injury and the schizoaffective diagnosis, and he stated his belief that his counsel would not present this mitigating evidence in his favor. He further restated that he planned to plead both self-defense and the insanity defense.

Shortly after these filings, the State requested that the court allow one of its experts to evaluate Cormier, noting that it anticipated "that the defense may raise the possible issue of mental disease/deficiency and/or other brain injury or psychological issues which could potentially be relevant to the issues of mens rea, and/or culpability." The State cited six documents Cormier had filed in the preceding five weeks that referenced his mental state or a potential insanity defense. Approximately one month later, in June 2022, the State moved for a competency evaluation because Cormier "has filed numerous pro-se motions with the District

---

[2]     Cormier first filed a document with the trial court asserting that he had suffered a head injury while incarcerated on October 17, 2019, immediately after he was released from the hospital. In another filing three days later, Cormier stated that he was experiencing headaches, neck pain, and blurred vision following the injury. In a December 2019 filing, Cormier stated that he was in "great pain from [his] traumatic injuries." He described the incident leading to his injury, and he stated that he was still having headaches, dizziness, neck pain, and blurred vision.

Clerk's Office referencing his 'predisposed mental illness/psychosis medical issues.'" The trial court ordered Harris County Forensic Psychiatric Services to conduct an evaluation of Cormier's present competency to stand trial.

Dr. David Genac with the Harris Center for Mental Health and IDD's Competency and Sanity Unit interviewed Cormier and filed a report with the trial court on August 17, 2022. Dr. Genac considered the statutory factors that the Code of Criminal Procedure requires experts to consider when conducting a competency evaluation and detailed his findings with respect to each factor. *See* TEX. CODE CRIM. PROC. art. 46B.024. He opined that Cormier's "presentation is consistent with exaggerated symptoms of memory problems, disorientation, and auditory hallucinations." He believed that Cormier "exhibits rational and logical thought processes with the capacity to engage with counsel reasonably and rationally." Dr. Genac ultimately opined that Cormier "has sufficient present ability to consult with counsel with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him" and was therefore competent to stand trial.

Less than two weeks after Dr. Genac filed his report, Cormier requested a *Faretta* hearing to waive his right to counsel and proceed pro se. *See Faretta v. California*, 422 U.S. 806, 832, 835 (1975) (holding that language of Sixth Amendment "necessarily implies the right of self-representation," and defendant

wishing to represent himself must be made aware of dangers of self-representation so he can knowingly and intelligently forgo benefits of counsel). During this hearing, Cormier informed the trial court that he had suffered a traumatic brain injury in 2019, and his long-term symptoms included dizziness, recurring headaches, blurry vision, and memory loss. Cormier and the trial court discussed several other topics including his age, educational background, military service, and whether he had ever studied any law. He indicated that he understood the charges against him, the punishment range, the plea offers the State had made, and that if he proceeded pro se he would be held to the same standards and would be required to follow the same rules as licensed attorneys.

The trial court ordered Cormier's counsel to remain as standby counsel.[3] The court made oral findings on the record that Cormier "has sufficient age, background and education to understand the implications and the dangers of self-representation"; he "has been informed of the general nature of the offenses that he's charged with and the possible penalties if he is convicted of these offenses"; he understood "that there are technical rules of evidence and procedure in which he will be obligated to comply with"; he understood "that he will not be given special consideration because of his lack of legal training or legal experience"; he "will not be allowed to obstruct

---

[3]     Before the case reached trial, Cormier's appointed counsel withdrew as standby counsel, and the trial court appointed two new attorneys to serve as standby counsel.

6

the orderly procedure in the court or interfere with the fair administration of justice";
and he has no right to standby counsel, but the court would allow him to have standby
counsel. Both Cormier and the court signed written findings that memorialized the
oral findings.

Cormier represented himself at trial. The jury found Cormier guilty of both
charged offenses and assessed his punishment at ninety years' confinement for both
offenses. The trial court ordered the sentences to run concurrently. This appeal
followed.

## Competency to Waive Trial Counsel

In his sole issue, Cormier contends that the trial court erred by accepting his
waiver of the right to counsel and allowing him to represent himself at trial because
he was incompetent to waive this right. Cormier argues that because the trial court
heard that he had suffered a traumatic brain injury in 2019—three years before the
*Faretta* hearing—it should have ordered a formal competency evaluation due to a
bona fide doubt about Cormier's competency.

### A.     Standard of Review and Governing Law

In *Faretta*, the United States Supreme Court's "foundational 'self-
representation' case," the Court held that the Sixth and Fourteenth Amendments
include a constitutional right to proceed without counsel when a criminal defendant
voluntarily and intelligently elects to do so. *Indiana v. Edwards*, 554 U.S. 164, 170

7

(2008) (quoting *Faretta*, 422 U.S. at 807); *see Osorio-Lopez v. State*, 663 S.W.3d 750, 756 (Tex. Crim. App. 2022) ("It is well established that every criminal defendant has a constitutional right to the assistance of counsel and the constitutional right to self-representation."). A defendant need not have the skill and experience of an attorney to competently and intelligently choose self-representation. *Faretta*, 422 U.S. at 835. However, the defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id.* (quotations omitted). A defendant's technical legal knowledge is not relevant to an assessment of his knowing exercise of the right to defend himself. *Id.* at 836.

The effectiveness of a waiver of counsel depends on the totality of the circumstances, which includes consideration of the defendant's background, experience, and conduct. *Osorio-Lopez*, 663 S.W.3d at 756 (quotations omitted). "An invalid waiver waives nothing." *Williams v. State*, 252 S.W.3d 353, 358 (Tex. Crim. App. 2008). If a defendant's waiver of the right to counsel is invalid, the right to counsel remains in effect, and the defendant is entitled to counsel. *Osorio-Lopez*, 663 S.W.3d at 756. "A complete denial of the constitutional right to counsel is a structural defect, and prejudice is presumed because the trial has been rendered inherently unfair and unreliable." *Id.* (quotations omitted).

8

A criminal defendant may not stand trial unless he is competent, and he may not waive his right to counsel unless he does so "competently and intelligently." *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quotations omitted). The Supreme Court does not require courts to measure competence to waive the right to counsel by a standard higher than that for determining competence to stand trial. *See id.* at 398. "[T]he competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself." *Id.* at 399.

The Supreme Court has cautioned, however, that mental illness "is not a unitary concept" but can vary in degree and over time, and it "interferes with an individual's functioning at different times in different ways." *Edwards*, 554 U.S. at 175. Thus, the Constitution "permits States to insist upon representation by counsel for those competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Id.* at 178. States are not required to adopt a higher standard, and Texas has not done so.[4] *Osorio-Lopez*, 663 S.W.3d at 757; *see Godinez*, 509 U.S. at 402

---

[4] To the extent Cormier asks this Court to adopt a higher standard for determining competence to waive the right to counsel, as permitted by *Edwards*, we decline the invitation to do so. *See Indiana v. Edwards*, 554 U.S. 164, 178 (2008) ("[T]he Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under *Dusky* [*v. United States*, 362 U.S. 402, 402 (1960) (per curiam), which defined constitutional standard for competency to stand

(noting that while states are free to adopt more elaborate competency standards, this is not required by Due Process Clause).

As a matter of due process, a criminal defendant who is incompetent may not stand trial. *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018). In Texas, a defendant is presumed competent to stand trial and shall be found competent unless proved incompetent by a preponderance of the evidence. TEX. CODE CRIM. PROC. art. 46B.003(b); *Ex parte LaHood*, 401 S.W.3d 45, 54 (Tex. Crim. App. 2013). Incompetency to stand trial is shown if the defendant does not have (1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against him. TEX. CODE CRIM. PROC. art. 46B.003(a); *Boyett*, 545 S.W.3d at 563; *see also Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam) (adopting above test as constitutional standard for determining competency to stand trial).

The fact that a defendant has a mental illness does not by itself mean that he is incompetent to stand trial, nor does the fact that he "obstinately refuses to cooperate with his trial counsel." *Turner v. State*, 422 S.W.3d 676, 691 (Tex. Crim. App. 2013); *see Ross v. State*, 133 S.W.3d 618, 627 (Tex. Crim. App. 2004) (stating that defendant's statements "which suggest some irrationality" do not necessarily

trial] but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves.").

10

show inability to rationally consult with counsel or understand proceedings against him). "[E]ven a mentally ill defendant who resists cooperating with his counsel may nevertheless be found competent if the manifestations of his particular mental illness are not shown to be the engine of his obstinacy." *Turner*, 422 S.W.3d at 691. However, if the defendant's mental illness "operates in such a way as to prevent him from rationally understanding the proceedings against him or engaging rationally with counsel in the pursuit of his own best interests, he cannot be made to stand trial consistent with due process." *Id.*; *Boyett*, 545 S.W.3d at 564 ("[T]here must be some evidence indicating that the defendant's refusal to rationally engage with counsel is caused by his mental illness.").

The trial court is in the best position to make the determination of whether a mentally ill defendant is competent to waive the right to counsel and proceed pro se. *Osorio-Lopez*, 663 S.W.3d at 757 (quoting *Chadwick v. State*, 309 S.W.3d 558, 561 (Tex. Crim. App. 2010)). This determination is a mixed question of law and fact that turns on an evaluation of credibility and demeanor, and we therefore review these rulings for an abuse of discretion. *Chadwick*, 309 S.W.3d at 561. We afford almost total deference to trial court rulings on such mixed questions, and we view the evidence in the light most favorable to the trial court's ruling. *Id.* We will imply any findings of fact supported by the evidence and necessary to support the trial court's

11

ruling when the court does not make explicit findings or if the implied finding is not contrary to any specific findings. *Id.* at 561, 562.

## B. Analysis

On appeal, Cormier argues that the trial court abused its discretion in allowing him to waive his right to counsel and represent himself because the court heard at the *Faretta* hearing that he had suffered a traumatic brain injury in 2019 and still experienced symptoms from this injury, but the court did not inquire about "the state of his injury, cognitive function, or necessary treatment." He argues that the evidence of his injury raised a bona fide doubt about his competency, and therefore the trial court should have ordered a formal competency evaluation to determine if he was competent to waive his right to counsel. Under the facts of this case, we disagree.

The record reflects that Cormier, in pro se filings with the trial court, began raising the possibility of asserting the insanity defense in 2018, early in the case. In October 2019, after he fell and experienced a head injury while incarcerated at the Harris County Jail, he began informing the trial court of that injury—and the accompanying symptoms, including headaches, neck pain, and blurred vision—in pro se filings. In March 2022, he began asserting in pro se filings that he had been evaluated by a doctor who determined that he had either schizoaffective or

schizotypal disorder, a diagnosis that likely played a role in his actions on the morning of the shootings.

Around the time that he began asserting that he had a prior mental illness, Cormier was also dissatisfied with his fourth appointed counsel, and he filed a pro se motion for the trial court to allow hybrid representation. Cormier cited caselaw in which the courts allowed hybrid representation, and he argued that he could assist in his defense by conducting legal research and helping prepare pretrial motions.

Due to these filings, the State requested that the trial court allow its expert to evaluate Cormier, noting that Cormier "may raise the possible issue of mental disease/deficiency and/or other brain injury or psychological issues which could potentially be relevant to the issues of mens rea, and/or culpability." It also moved for a competency evaluation because Cormier "has filed numerous pro-se motions with the District Clerk's Office referencing his 'predisposed mental illness/psychosis medical issues.'" The trial court ordered that Cormier undergo an evaluation of his competency to stand trial.

Dr. David Genac interviewed Cormier in August 2022, and he filed the resulting report with the court on August 17. The section of the report entitled "Psychosocial/Medical/Psychiatric History" included a review of Cormier's medical records since he had been incarcerated. According to these records, Cormier denied having a history of mental illness, substance abuse, or a traumatic brain injury when

13

he arrived at the Harris County Jail in April 2017. A psychiatrist described Cormier's "mental status as guarded, noting that he displayed rambling speech as well as passive suicidal ideation," but "the psychiatrist noted that Mr. Cormier was not psychotic." Three days later, a psychiatrist evaluated Cormier and noted that he "showed symptoms of obsessive-compulsive disorder and dependent and narcissistic traits," but he "did not show signs of psychosis." In August 2017, Cormier informed a psychiatrist "that his killing of his wife was a 'crime of passion and that he had temporary insanity.'"

Cormier's medical records showed that he was treated at Ben Taub General Hospital for three days in October 2019 "secondary to him having a reported fall secondary to being prescribed prazosin." Cormier had "a small scalp laceration in the back of his head; however, neurological evaluations showed no signs of neurological abnormalities."

Dr. Genac's report contained the following observations relevant to this appeal:

> During the disclosure process, I also informed Mr. Cormier that competency to stand trial evaluations focus on a defendant's present state of mind and capacities. I also informed him that competency evaluations do not focus on if a person committed the said crime or not. Furthermore, I informed him that competency evaluations do not focus on a defendant's state of mind at the time of the alleged offense. Nonetheless, Mr. Cormier repeatedly asserted that I allow him to provide information about his state of mind at the time of the alleged offenses and claimed that he was mentally ill at the time of the said offenses. He also asserted on multiple occasions that he suffered a

14

traumatic brain injury due to being prescribed a psychotropic medication by a psychiatrist at the jail, which caused him to fall, resulting in a brain injury. As such, he feigned having memory problems about when the said offenses occurred. He also feigned not knowing the current year, yet he knew his age. He also claimed that he did not know that he was in the city of Houston, despite knowing that he was in Harris County and in the state of Texas. Interestingly, he reported that he was born and raised in Houston.

Mr. Cormier reported having chronic auditory hallucinations about hearing his wife speak to him. He claimed that his wife was speaking to him during the interview, yet he did not appear distracted or internally occupied, nor could he provide me with a detailed account of what his wife was saying to him.

Interestingly, despite Mr. Cormier's claims of incompetency and insanity, he predicted that the court would release him from jail due to being found not guilty by reason of insanity, or the court would find him guilty and release him for time served.

Ironically, Mr. Cormier's repeated and intentional presentation of integrated data regarding his alleged mental health symptoms, memory problems, and diagnoses, for which he ultimately advocated was evidence of being incompetent, ended up being counterproductive to his claim for incompetency. Mr. Cormier's ability to advocate for himself at that level demonstrated that he has the capacity to engage in goal-directed behavior, has rational and logical thinking, and can effectively communicate on his behalf, which indicated that he has the ability to understand legal proceedings and is competent to stand trial.

Furthermore, according to medical records, Mr. Cormier has not shown signs of self-neglect, loss of reality testing, disruptive behavior, or impaired communication. He has submitted to routine recommended medical assessments over the past five years and engaged cooperatively and reasonably with clinicians during those encounters while describing his complaints.

Mr. Cormier made highly detailed statements that were orderly, rational, and logical. His thought content was appropriate to conversation topics, and he did not display bizarre or delusional ideations. I did not observe him engaging in unusual behaviors that indicated that he was experiencing perceptual disturbances during the

15

interview (e.g., he did not speak to himself or anyone other than the examiner). He demonstrated the ability to reason abstractly for matters such as discussing plea-bargaining and understanding the adversarial nature of courtroom proceedings.

Dr. Genac addressed the factors that the Code of Criminal Procedure requires experts to consider when conducting competency evaluations. *See* TEX. CODE CRIM. PROC. art. 46B.024. He opined that Cormier had a factual and rational understanding of the accusations against him and the potential consequences. Cormier was able to discuss the facts of the case in a reasonable manner and could disclose his memories of the shootings. He could communicate clearly and in an organized manner. He understood the potential outcomes of a trial, plea options, the adversarial nature of a trial, the roles of the participants in a trial, potential sources of evidence, and that his testimony was optional. Although Cormier "feigned having symptoms of mental illness and problems with memory during [Dr. Genac's] interview with him," Cormier was calm, polite, cooperative, and "capable of conforming his behavior to that ordinarily expected of defendants in criminal proceedings." He could "discuss the alleged events based on his perspective reasonably and rationally."

Dr. Genac opined that Cormier's "presentation is consistent with exaggerated symptoms of memory problems, disorientation, and auditory hallucinations." Cormier had not been prescribed any medication. Dr. Genac ultimately concluded that Cormier "has sufficient present ability to consult with counsel with a reasonable

16

degree of rational understanding and has a rational as well as factual understanding of the proceedings against him," and he was therefore competent to stand trial.

Less than two weeks after Dr. Genac filed his report with the trial court, Cormier requested to waive his right to counsel and the court held a *Faretta* hearing. At the hearing, the court noted that Cormier was using a wheelchair and asked why. Cormier responded that he had suffered a traumatic brain injury in 2019, and he tends to "get vertigo and dizzy" when he walks long distance. He was able to discuss with the court how long he had been incarcerated pending trial.

The State then gave a detailed statement of probable cause for the two charged offenses. The court asked questions throughout the State's recitation, including questions about Cormier's relationship to McWhite, whether Cormier waived his *Miranda* rights before confessing to the shootings, whether the State had made plea offers, whether discovery had been completed, and whether the State had tested the ballistics evidence.

The court then asked Cormier a series of questions. They discussed Cormier's middle name, his age, his educational background, his military service, and whether he had any learning disabilities or had ever been treated for a mental health disorder. Cormier informed the court that he had studied a little bit of law in the 1980s when he was taking real estate courses. He had not had any criminal law training, "but [he] self-studied a lot." The discussion returned to the topic of Cormier's head injury, and

he informed the court that he had recurrent headaches, blurred vision, and memory loss.

Cormier represented that he understood the charges against him, as well as the potential punishment range for both offenses: five to ninety-nine years or life. He heard the probable cause statement, but he did not "agree with everything [the prosecutor] said." He understood the plea offers that had been made to him, and he declined the offers. He understood that he had the right to court-appointed counsel, but he was waiving that right and he no longer wanted his appointed counsel to represent him. He had "[n]othing against [his counsel] personally," but he believed that his counsel "hasn't been forward with all the mitigating evidence to prove that what occurred occurred due to extenuating circumstances." He understood that by waiving his right to counsel, he would not be able to raise a complaint of ineffective assistance on appeal. He also understood that he would have to comply with the same rules of evidence and procedure that lawyers must follow with no special considerations and that he might waive potential points of error if he did not follow the correct procedures. Cormier felt that he was familiar enough with the Penal Code and Code of Criminal Procedure that he could represent himself. He stated that he "feel[s] confident going forward." He made the decision "knowingly, willingly and intelligently to take [his] fate in [his] own hands."

We conclude that the record supports the trial court's implied finding that Cormier was competent to waive his right to counsel. Although the trial court did not order a competency evaluation upon hearing Cormier's statements during the *Faretta* hearing that he had suffered a traumatic brain injury in October 2019, a competency evaluation had been completed mere weeks before the hearing. During that evaluation, Dr. Genac considered Cormier's claims of a traumatic brain injury and concluded that Cormier was exaggerating his symptoms and that lingering effects from the injury did not affect Cormier's ability to communicate rationally about his case or his ability to advocate on his own behalf. The trial court was not required to order another competency evaluation so soon after an expert had found Cormier competent to stand trial, especially in the absence of evidence of any change in circumstances, such as another head injury. *See Fletcher v. State*, 474 S.W.3d 389, 401 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (concluding that trial court was not constitutionally required to conduct further inquiry into defendant's competence to conduct own defense once expert found him competent to stand trial).

The trial court held a lengthy conversation with Cormier during the *Faretta* hearing, and it was in the best position to determine whether Cormier was competent to waive his right to counsel. *See Chadwick*, 309 S.W.3d at 561. We hold that the trial court did not abuse its discretion by impliedly finding that Cormier was competent to waive his right to counsel and by allowing him to proceed pro se.

19

We overrule Cormier's sole issue on appeal.

## Conclusion

We affirm the judgments of the trial court. All pending motions are denied.


David Gunn
Justice

Panel consists of Chief Justice Adams and Justices Gunn and Guiney.

Do not publish. TEX. R. APP. P. 47.2(b).