# Court of Appeals
## Tenth Appellate District of Texas

10-25-00039-CR

Milton Rederick Miller,
Appellant

v.

The State of Texas,
Appellee

On appeal from the
272nd District Court of Brazos County, Texas
Judge John L. Brick, presiding
Trial Court Cause No. 22-04187-CRF-272

JUSTICE SMITH delivered the opinion of the Court.

## MEMORANDUM OPINION

Following a jury trial, Milton Rederick Miller was convicted of unlawful possession of a firearm by a felon. *See* TEX. PENAL CODE ANN. § 46.04. The jury found two felony enhancement paragraphs to be true and assessed his punishment at forty-five years in prison. In four issues on appeal, Miller advances as-applied constitutional challenges under the United States and Texas Constitutions, contends that the trial court erred in granting his request

to represent himself on the first day of trial, and argues that he was denied access to discovery.  We affirm.

## As-Applied Constitutional Challenges

In his first and second issues, Miller claims that because the indicted predicate felony underlying his charge was non-violent and decades old, section 46.04 of the Penal Code was unconstitutional as applied to him under the Second and Fourteenth Amendments to the United States Constitution and Article I, Section 23 of the Texas Constitution.[1]  *See* U.S. CONST. amends. II, XIV; TEX. CONST. art. I, § 23; TEX. PENAL CODE ANN. § 46.04.  He urges us to consider *Range v. Attorney General of the United States*, 124 F.4th 218 (3d Cir. 2024), and to "reject any claim that non-violent alleged predicate felons are not among 'the people' protected by the Second Amendment."  More specifically, he asks us to find that he is not excluded from Second-Amendment protections "as a result of his 1987 predicate felony conviction."  We disagree.

RELEVANT BACKGROUND

Miller entered a residence without the occupants' permission.  He eventually exited the residence after multiple requests.  Once outside, Miller removed a handgun from his waistband, waved it in the air, and scratched his head with it before wandering off the property.  Law enforcement officers

---

[1] Though Miller notes that the Texas Constitution may afford greater protection than the Federal Constitution, he does not argue that it does so here.  We therefore address these two issues together.

located Miller down the road from the residence and detained him. Officers determined that Miller was a convicted felon who was on parole. They arrested him for unlawful possession of a firearm by a felon after locating a loaded revolver and a BB gun in his waistband.

Miller was indicted for unlawful possession of a firearm by a felon.[2] *See* TEX. PENAL CODE ANN. § 46.04. In the indictment, the alleged predicate felony was a 1987 conviction for unauthorized use of a motor vehicle. The enhancement paragraphs alleged two separate final felony convictions in 1987 and 1990 for burglary of a vehicle.

After Miller was convicted and sentenced, his appellate counsel filed a motion for new trial asserting his constitutional challenges. The trial court denied the motion for new trial by written order without a hearing.

ANALYSIS

Section 46.04 of the Penal Code, as relevant here, prohibits a person convicted of a felony from possessing a firearm at any location other than the premises at which the person lives.[3] *See id.* § 46.04(a)(2).

---

[2] Miller was also indicted on one count of unlawful carrying of a weapon with a felony conviction. *See* TEX. PENAL CODE ANN. § 46.02. The State abandoned this count at trial.

[3] Despite Miller's parole status at the time, the State did not indict Miller under subsection (a)(1) for possessing a firearm before the fifth anniversary of his release from parole. *See id.* § 46.04(a)(1).

In *New York State Rifle & Pistol Assn., Inc. v. Bruen*, the Supreme Court recognized that the "Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home[,]" and clarified the proper framework for evaluating Second-Amendment challenges to regulations restricting that right. 597 U.S. 1, 10, 17-31 (2022). Under *Bruen*, courts first determine whether the Second Amendment's plain text covers the individual's conduct. *Id.* at 24. This includes determining whether the person challenging the regulation is one of "the people" who holds Second Amendment rights. *See id.* at 26, 31-32; *see also, Swindle v. State*, No. 08-23-00057-CR, 2023 WL 7171472, at *2 (Tex. App.—El Paso, Oct. 31, 2023, pet. ref'd) (mem. op., not designated for publication). If so, the conduct is presumptively protected, and the government must demonstrate that the challenged regulation is consistent with the Nation's historical tradition of firearm regulation. *Bruen*, 597 U.S. at 24.

Resolving an as-applied challenge requires a recourse to evidence. *Estes v. State*, 546 S.W.3d 691, 698 (Tex. Crim. App. 2018). We first address Miller's comparison of his case to *Range*. The federal statute at issue in *Range* regulates possession of firearms by any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year, although State misdemeanors are excluded from that prohibition if they are

punishable by a term of imprisonment of two years or less. *Range*, 124 F.4th at 223 (applying 18 U.S.C. §§ 921(a)(20)(B), 922(g)(1)). Range's non-violent 1995 Pennsylvania misdemeanor conviction was punishable by up to five years in prison. *Id.* at 222-23. The Third Circuit court determined that the federal law disarming Range based on that misdemeanor was unconstitutional as-applied to him. *Id.* at 228, 232.

However, the facts in *Range* are clearly distinguishable from the instant case. The most obvious difference is that Range was convicted of a misdemeanor and completed his term of community supervision, while Miller was convicted of a felony and sentenced to prison for it. *Id.* at 223. Both before and after *Bruen*, the Supreme Court has affirmed that "many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful[.]'" *United States v. Rahimi*, 602 U.S. 680, 700 (2024) (citing *District of Columbia v. Heller*, 554 U.S. 570, 626, 627 n. 26 (2008)). Since *Bruen*, other Texas intermediate appellate courts have analyzed facial constitutional challenges to section 46.04 under the Second Amendment and have uniformly upheld its constitutionality. *See, e.g., Ex parte Huell*, 704 S.W.3d 246, 250 (Tex. App.—Fort Worth 2024, no pet.); *Ex parte Strickland*, No. 12-24-00031-CR, 2024 WL 4471121, at *4 (Tex. App.—Tyler Oct. 9, 2024, pet. ref'd) (mem. op. on reh'g, not designated for

publication); *Swindle v. State*, 2023 WL 7171472, at *5. These courts have resolved the facial constitutional challenges by finding that convicted felons have historically lacked Second Amendment rights and are not among "the people" afforded its protections.[4] *See id.*

Furthermore, Miller's focus on his non-violent indicted predicate felony ignores his criminal history as a whole. The *Range* court considered Range's entire criminal history in its analysis, and Miller has not provided any supporting authority for the premise that an as-applied Second Amendment analysis is limited to the predicate felony alleged in the indictment.[5] *Range*, 124 F.4th at 223. Outside of the 1995 conviction, Range's criminal history was limited to traffic and parking infractions and fishing without a license. *Id.* Here, Miller has six prior felony convictions all resulting in incarceration, and he was on parole at the time he committed the instant offense. Notably, Miller's criminal history includes one conviction for sexual assault. In an

---

[4] The Tyler Court of Appeals has also addressed (in dicta) the existence of historical analogues to section 46.04. *Strickland*, 2024 WL 4471121, at *3 (discussing *Rahimi* and explaining that "[l]ike the surety and going-armed laws, Section 46.04 applies to individuals found to have threatened the physical safety of others or otherwise shown a propensity for consequential lawlessness.").

[5] *See United States v. Diaz*, 116 F.4th 458, 467 (5th Cir. 2024) (considering all of Diaz's prior felony convictions punishable by imprisonment for a term exceeding one year); *United States v. Davis*, No. 24-20258, 2025 WL 958265, at *2 (5th Cir. Mar. 31, 2025) (not designated for publication) (considering defendant's criminal history that was "replete with convictions of crimes punishable beyond one year"); *see also United States v. Bullock*, 123 F.4th 183, 184 (5th Cir. 2024) (considering defendant's "numerous felony convictions" tracing back to 1994); *United States v. Collette*, No. 22-51062, 2024 WL 4457462, at *2 (5th Cir. Oct. 10, 2024). These cases, though not precedential, are persuasive in our analysis.

attempt to discount this prior conviction, he mentions that sexual assault may be committed using non-violent means and notes the absence of factual details in the record about how Miller committed the sexual assault. *See* TEX. PENAL CODE ANN. § 22.011. However, the offense of sexual assault necessarily presents a threat to the physical safety of another. *See Rahimi*, 602 U.S. at 700 (having "no trouble" finding "[o]ur tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others."); *Wisdom v. State*, 708 S.W.2d 840, 845 (Tex. Crim. App. 1986) (finding that rape constitutes a crime of violence per se and that "[t]he Legislature incorporated the old laws (Rape, Aggravated Rape, Sexual Abuse, Aggravated Sexual Abuse, Rape of a Child, Sexual Abuse of a Child) into two new laws (Sexual Assault and Aggravated Sexual Assault[.]")). "When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Rahimi*, 602 U.S. at 698.

Moreover, a felony offense need not necessarily be violent to fit within the Nation's "tradition of serious and permanent punishment." *See Diaz*, 116 F.4th at 468-70. In *Diaz*, the Fifth Circuit court rejected an as-applied constitutional challenge regarding the permanent disarmament of an individual with non-violent predicate felonies for car theft, evading arrest, and possessing a firearm as a felon. *Id.* at 467. The court found that colonial-era

theft laws that imposed capital punishment and estate forfeiture on thieves provided sufficient historical analogues for permanently disarming individuals convicted of theft. *Id.* at 467-471. Several other circuit courts have considered and overruled similar as-applied challenges to the Federal disarmament statute by non-violent felons, finding that "there is no need for felony-by-felony litigation" and refusing to draw "constitutional distinctions based on the type of felony involved." *See, e.g., United States v. Jackson*, 110 F.4th 1120, 1125 (8th Cir. 2024); *Vincent v. Bondi*, 127 F.4th 1263, 1266 (10th Cir. 2025); *see also United States v. Duarte*, 137 F.4th 743, 761-62 (9th Cir. 2025) (finding the "permanent and categorical disarmament of felons is consistent with this Nation's historical tradition of firearm regulations"); *Zherka v. Bondi*, 140 F.4th 68, 93 (2nd Cir. 2025); *United States v. Hunt*, 123 F.4th 697, 703, 708 (4th Cir. 2024). Though these federal circuit courts reach their conclusions under *Bruen*'s historical-analogue step, the end result is consistent with the Texas intermediate appellate courts that have determined that all felons are excluded from Second Amendment protections under *Bruen*'s first step. *See, e.g., Huell*, 704 S.W.3d at 249-250; *Strickland*, 2024 WL 4471121, at \*4; *Swindle*, 2023 WL 7171472, at \*4.

Regarding his as-applied challenge under the Texas Constitution, Miller discusses the Court of Criminal Appeals' reasoning in *Shepperd v. State*, 586

S.W.2d 500 (Tex. Crim. App. [Panel Op.] 1979), in upholding the constitutionality of former section 46.05 of the Penal Code - the predecessor statute to the current unlawful possession of a firearm statute. The former statute applied only to persons "convicted of a felony involving an act of violence or threatened violence[.]" *Id.* at 502. Miller points to the Court's statement that "[f]elons who have committed crimes of violence or threatened violence are more likely than other felons to commit dangerous crimes" as support for his contention that the legislative prerogative in Article I, Section 23 should not extend to his non-violent alleged predicate felony. *Id.* Miller takes this sentence out of context. The sentence in its appropriate context reads as follows:

> A federal statute (18 U.S.C. Appendix, Section 1201(a)) makes it an offense for a felon (of any stripe) to possess or to receive a firearm in commerce or affecting commerce. The classification of felons for this purpose is rational and does not deny due process. Felons who have committed crimes of violence or threatened violence are more likely than other felons to commit dangerous crimes. A fortiori, the classification of such felons is rational.

*Id.* (internal citations omitted). Thus, the Court in *Shepperd* noted that because there existed a rational basis for restricting firearm possession for all felons, there existed an even stronger rationale for restricting firearm possession by violent felons.

In the 1993 Penal Code amendments, the Legislature chose to subject all felons to the proscriptions of section 46.04, even those offenses classified as state jail felonies.[6] *Tapps v. State*, 294 S.W.3d 175, 179 (Tex. Crim. App. 2009) (citing Acts 1993, 73rd Leg., ch. 900, § 1.01, pp. 3603, 3602 & 3688, eff. September 1, 1994 as "creating state-jail felonies in newly enacted Section 12.35, classifying them as 'felonies' in amended Section 12.04, and amending Section 46.04 to embrace any 'felony,' respectively."). Even post-*Bruen*, non-violent predicate felonies have supported a defendant's conviction under section 46.04. *See e.g., Strickland*, 2024 WL 4471121, at *1 n.1 (driving while intoxicated third offense or more); *Jimison v. State*, Nos. 02-23-00084-CR, 02-23-00085-CR, 2025 WL 52113, at *1-3 (Tex. App.—Fort Worth Jan. 9, 2025, pet. ref'd) (mem. op., not designated for publication) (possession of a controlled substance).

Finally, as to the remoteness of the predicate felony, the Court of Criminal Appeals has discussed the rationale behind applying the current version of section 46.04 to all felons, regardless of the date of their prior felony conviction, as follows:

> There is no rational reason to distinguish, for purposes of applicability of § 46.04, between felons whose prior conviction occurred before September 1, 1994 and those whose prior conviction went down after September 1, 1994. Viewing *the date* of

---

[6] Miller notes that his predicate felony has been legislatively downgraded since the date of his conviction from a third-degree felony to a state jail felony.

the prior conviction as being an element of § 46.04 would result in the absurd consequence of omitting all felons who committed their prior felonies before September 1, 1994 from the coverage of § 46.04. The legislative history of § 1.18 of S.B. 1067 reveals it was written to make application of the revisions of the Penal Code prospective. SENATE RESEARCH CENTER, BILL ANALYSIS OF ENROLLED LEGISLATION, S.B. 1067, 73rd Leg., R.S. (17). This should mean that all felons who are found in possession of a firearm after September 1, 1994 would be subject to prosecution under § 46.04, regardless of when they received their prior conviction. After all, the commission of the offense and the formation of appellee's criminal intent came together on the alleged date upon which appellee, a felon, possessed the firearm, and not upon the date [...] when appellee became a felon. We conclude that only appellee's status as a felon is an element of § 46.04, not the date upon which the prior felony conviction occurred.

*State v. Mason*, 980 S.W.2d 635, 640 (Tex. Crim. App. 1998).

We find that section 46.04 is not unconstitutional as applied to Miller under the Second and Fourteenth Amendments to the United States Constitution or Article I, Section 23 of the Texas Constitution. Accordingly, we overrule Miller's first and second issues.

## Pro Se Representation

In his third issue, Miller contends that the trial court constitutionally erred by granting his request to represent himself on the first day of trial despite previously determining "under the standards of *Indiana v. Edwards*" that he was "incompetent to self-represent," and without making specific

factual findings to explain the changed ruling. 554 U.S. 164 (2008). We disagree.

STANDARD OF REVIEW AND RELEVANT LAW

In *Indiana v. Edwards*, the Supreme Court considered whether the federal Constitution requires a trial judge to allow a mentally ill defendant, upon request, to proceed *pro se* at trial. *Id.* at 167. The Court recognized a "mental-illness-related limitation on the scope of the self-representation right," explaining that

> the Constitution permits judges to take a realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so. That is to say, the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under *Dusky* but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves.

*Id.* at 171, 177-78.

We review the trial court's decision to permit self-representation for an abuse of discretion. *See Chadwick v. State*, 309 S.W.3d 558, 561 (Tex. Crim. App. 2010). Accordingly, we view the evidence in the light most favorable to the trial judge's ruling and imply any findings supported by the evidence and necessary to support that ruling. *Id.*

A few months after Miller's first court-appointed attorney was permitted to withdraw from representation, Miller's second appointed attorney filed a motion to withdraw. At the hearing on the motion, Miller indicated frustration that neither of his attorneys would "file to preserve [his] errors." The trial court denied the motion to withdraw.

A few months before Miller's jury trial setting, Miller filed a *pro se* "Application for Writ of Habeas Corpus and Motion Citing Exception to Substance of Indictment" and "Motion to Dismiss with Prejudice All Extant Evidence." His appointed counsel then filed a "Motion for Pro Se Representation," requesting to be removed from the case so that Miller could represent himself, per Miller's request. At the hearing on the motion for *pro se* representation, the trial court expressed discomfort with Miller representing himself due to the potentially habitual punishment range "unless you prove to me somehow you know the law, you know the Code of Procedure, you know the Rules of Evidence, and can effectively represent yourself with so much at stake." In response, Miller indicated a desire to represent himself so that his motions could be heard and stated, "if it's my fault that I lose, it's my fault. I can accept whatever it is." After further discussion, the trial court stated, "I don't find that you are competent enough to proceed representing yourself.

Because you don't - - based on what you told me, clearly do not understand the process, the procedures of the criminal law." The following exchange is at the center of Miller's appellate complaint:

> [The State]: And, Judge, just to be clear, you are making a finding under *Indiana v. Edwards* that the defendant, while competent to stand trial - -
>
> [The Court]: Right.
>
> [The State]: - - is incompetent to represent himself? Not that the defendant is not incompetent [sic] to stand trial? And I would ask [defense counsel] to place his beliefs on the record about whether or not the defendant is competent to stand trial.
>
> [Defense Counsel]: Mr. Miller's competent.
>
> [The Court]: What?
>
> [Defense Counsel]: He's competent to stand trial.
>
> [The Court]: Yeah, I believe you're competent. I understand. What we're talking about is we want to make sure you're able to assist in the defense of your case, help your attorney make decisions and subpoena witnesses and know what's going on. I just don't believe that you have the skill set that you need to represent yourself effectively, especially with 25 years as a minimum hanging over your head. That's my concern.
>
> The Defendant: I probably do not, but I'm willing to accept whatever consequences come from my own actions.

The trial court ultimately denied the motion for *pro se* representation.

Miller's trial did not proceed as scheduled. At a subsequent docket call hearing, the trial court briefly revisited Miller's prior request for self-

representation. The court reiterated, "I think you're competent, it's just representing yourself and knowing all the rules and regulations and procedures is what I was worried about at the last hearing." Miller, noting that he was not re-urging his motion for self-representation at that time, "acquiesce[d]" to the trial court's decision and agreed that he would be ready for trial with his appointed attorney.

However, on the morning of jury selection, Miller re-urged his request to represent himself. The trial court reminded Miller that it had not found he was "competent enough" to represent himself based on his lack of "knowledge of any of the processes or procedures that are involved in trying a case …." The court then inquired as to Miller's educational background, ability to read and write the English language, and legal experience. Additionally, the trial court warned Miller that should self-representation be permitted, he would be held to the same standards as an attorney. When asked its position on Miller's request to represent himself, the State explained

> Judge, at this point I think that there has not been anything to indicate that Mr. Miller is not competent. My understanding of the state of the law is that the minimal standard of competency required to stand trial is also, for the most part, the same standard that a person would need to represent themselves. So at this point, Judge, I think that Mr. Miller has made it clear that he would like to represent himself. And in the absence of any evidence that he's not competent, then I think Mr. Miller should be allowed to proceed with that right and represent himself if that's what he wants to do.

After further admonishing Miller about some of the risks of self-representation, Miller agreed that he was freely and voluntarily waiving his right to counsel, signed the written *Faretta* warnings in court, and proceeded to trial *pro se*.

ANALYSIS

We do not agree with Miller's assessment that the trial court found that Miller "met the *Edwards* criteria requiring attorney representation" in initially denying his motion for *pro se* representation. The confusion arises from the prosecutor mentioning *Edwards* in clarifying that Miller's competency to stand trial was not a concern. There is, however, no evidence of mental illness in the record to support a finding under *Edwards* that Miller "suffer[ed] from severe mental illness to the point where [he was] not competent to conduct trial proceedings by [himself]." *Edwards*, 554 U.S. at 178. Indeed, Miller does not contend on appeal that he was mentally ill or incompetent to stand trial. The trial court unequivocally expressed confidence in Miller's competence to stand trial and initially denied his request to represent himself based on his lack of legal knowledge and his potential habitual punishment range. The record does not support Miller's contention that the trial court found he was incompetent under *Edwards*.

Moreover, even if the trial court initially denied Miller's request for *pro se* representation under *Edwards*, Miller cites to no authority requiring the trial court to provide an explanation for its changed ruling. The record also contains a reasonable explanation – the State's reminder immediately prior to the trial court's changed ruling that "the minimal standard of competency required to stand trial is also, for the most part, the same standard that a person would need to represent themselves." Considering the record, and focusing on "whether the defendant is competent to choose to proceed *pro se*, not whether he is equipped to represent himself at trial[,]" we find that the trial court did not abuse its discretion in granting Miller's request to represent himself. *Osorio-Lopez v. State*, 663 S.W.3d 750, 757 (Tex. Crim. App. 2022) (citing *Godinez v. Moran*, 509 U.S. 389, 400-01 (1993)).

We overrule Miller's third issue.

## Discovery Access

In his fourth issue, Miller asserts that the trial court erred by "forc[ing] [him] to trial without providing the necessary access" to the State's discovery and by failing to take "remedial actions" such as *sua sponte* continuing the trial after permitting Miller to self-represent. We disagree.

ANALYSIS

Before the jury panel was sworn, Miller informed the trial court that his prior attorney "left without leaving any work product." He elaborated that he had "no access to anything," and filed a handwritten document entitled "Motion to Compel Discovery." Miller's motion asserted that article 39.14 of the Code of Criminal Procedure was unconstitutional as applied to *pro se* defendants in violation of their equal protection and due process rights because it prevents them from "possessing" discovery materials. *See* TEX. CODE CRIM. PROC. ANN. arts. 39.14(d), (f). When the trial court explained that Miller, as a *pro se* defendant, could review the discovery but was not entitled to possession of it, Miller stated that he "wanted access" and claimed that his trial counsel never reviewed the discovery with him before trial. He complained specifically that his former attorney "should have transitioned to me what he had." The trial court denied Miller's motion to compel discovery "based on the timing of everything." Miller did not request a continuance to access and review the discovery. Shortly thereafter, when the trial court asked Miller if he was ready to proceed with trial, Miller said, "Yes, I am."

On appeal, Miller argues that the trial court rejected his "implied request for a continuance" to be given access to the State's discovery. A defendant waives his article 39.14 complaint by failing to seek a continuance at trial

where, as here, a continuance would afford the defendant "the opportunity to avoid the prejudice and impairment" of which he complains. *Rodriguez v. State*, 630 S.W.3d 522, 524-25 (Tex. App.—Waco 2021, no pet.). Motions for continuance must be written and sworn to preserve appellate complaints. *See* TEX. CODE CRIM. PROC. ANN. arts. 29.03, .08; *Anderson v.* State, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009). Miller did not request a continuance to allow time to review any discovery and affirmatively stated that he was ready to proceed to trial. He has thus waived his article 39.14 complaint, and his fourth issue is overruled.

## Conclusion

Having overruled all of Miller's issues on appeal, we affirm the judgment of the trial court.

STEVE SMITH
Justice

OPINION DELIVERED and FILED: June 11, 2026

Before Chief Justice Johnson,
    Justice Smith, and
    Justice Harris
Affirmed
Do not publish
CRPM

